**Raymond O. Hedrich and Catherine M. Hedrich, Plaintiffs-Appellants, v. Kane County, Illinois, Defendant-Appellee.**

**Gen. No. 69–52.**

**Second District.**

December 1, 1969.

Rehearing denied December 23, 1969.

Redman, Shearer & O'Brien, of St. Charles, for appellants.

William Ketcham, State's Attorney, of Geneva, and Benn E. G. Eilert, Assistant State's Attorney, for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Plaintiffs, Raymond O. Hedrich and Catherine M. Hedrich, appeal from a judgment order dismissing their suit for declaratory judgment entered after trial before the court below. The action had been brought to test the constitutionality of the zoning ordinance of Kane County, Illinois, defendant, as applied to plaintiffs' property.

The dispute involves a 100-foot strip of land (zoned F District-Farming) which was purchased by the plain-

tiffs in 1950 as part of a total 10-acre tract which included an existing trailer court on the main portion (zoned B–5 Business).

Plaintiffs filed application for rezoning of the 100-foot strip to extend the trailer park use, in 1953, in 1954, and in 1956. On each occasion the Kane County Zoning Board of Appeals recommended denial and the County Board denied the application.

In 1957 plaintiffs fully developed trailer spaces on the strip and it was occupied with 18 trailers which plaintiffs rented. In 1966 the County filed a complaint against plaintiffs charging violation of a zoning ordinance, and after being served, plaintiffs initiated this suit.

There was testimony by plaintiffs' witnesses that there were 18 trailer spaces on the 100-foot strip and 110 trailer spaces on the balance of their property. Several of the four homes in the block on the south side of Sherman Avenue, which abuts the subject property, were built after the main trailer court was in operation; and one residence was built subsequent to the use of the 100-foot strip as an extension of the trailer court. The remaining three sides of the original 10-acre tract are bounded by streets developed with residences. The homes vary in price from $15,000 to $35,000.

An owner, whose home was on the corner across the street and adjacent to the 100-foot strip, testified that he had built his home at a time when the subject property was an open field with a gravel pit on a part of it. At that time the main trailer court was already in existence although it has been much improved over the years. The 100-foot strip has been filled in and improved. He testified that his home had not depreciated in value; that at various times there were sales of homes facing the main trailer court and none remained vacant at any time. He said that the strip had been fenced in after the pit had been filled and that there was grass

and shrubbery, all of which were well kept, and part is being used as a playground.

An expert witness for the plaintiffs testified that the 100-foot strip would be worth $90,000 as an extension of the mobile home park as against $1,500 for farming purposes. This was based on $45 per month gross rental per trailer space for 18 spaces, capitalized at 10 years, as against no practical farming use. The witness further testified that the surrounding property would show no depreciation by reason of the presence of the 18 additional trailers on the subject property.

The plaintiffs admitted knowledge of the existing zoning prior to their purchase.

There was evidence that the zoning ordinance under the F–Farming classification would permit 5 single-family residences on the strip or 2 two-family dwellings.

The defendant's expert testified that the trailer use on the subject strip would depreciate the homes across the street by approximately 5%.

A land planning expert testified for the County that the density of use is the crux of the creating of buffer zones between two different types of uses, and that the highest and best use of the subject property would be for buffering purposes between the high density trailer court and the much lower density area beyond, with the highest and best use for the subject property being for two-family residences.

The final judgment order denying the relief sought by plaintiffs contained these findings which plaintiffs challenge:

> "1. That the plaintiffs herein, RAYMOND O. HEDRICH and CATHERINE M. HEDRICH, do not come before this Court with clean hands, and are therefore not entitled to equitable relief in this proceeding.

"2. That the County of Kane, in creating a buffer strip through the zoning proceedings held by it and questioned by the defendants, was in the proper and correct exercise of its legislative authority herein.

"3. That the equities are with the defendant, County of Kane."

Plaintiffs' initial claim of error is that the court improperly based its decision on an equitable doctrine, characterized as "clean hands," although the use of the property in violation of the zoning ordinance is not legally relevant to the determination of the validity of the ordinance. The plaintiffs also argue that the record does not support the judgment below in that the legislative action denying use of the property for an extension of the trailer court was arbitrary and unreasonable.

██ ██ That portion of the judgment order which refers to denial of equitable relief because plaintiffs did not come into court with "clean hands" makes an improper reference. There does not appear to be any challenge by the defendant that plaintiffs have not exhausted their administrative remedies, and in fact it is demonstrated in the record that plaintiffs have sought local relief several times, and that further attempts would be futile. Thus plaintiffs have standing to make a judicial challenge, and it appears that the case of The County of Lake v. MacNeal, 24 Ill2d 253, 260, 181 NE2d 85 (1962), is precedent for the proposition that admitted violation of an existing ordinance does not preclude challenge to that ordinance.

We do not agree with plaintiffs' argument, however, that the sole basis for the judgment was the improper application of the equitable doctrine. It is clear from the record that the case was tried on the merits of the legislative action. The preliminary portion of the final

order recites that the matter "has come on to be heard by the court on its merits." The judgment order in paragraph 2, supra, clearly decides the issue of the reasonableness of the legislative determination by the defendant.

It has been repeatedly noted that zoning lines must begin and end somewhere, and if the most that can be said is that the drawing of the line between permitted uses presents a fairly debatable question, the determination of the legislative body will be upheld. Seith v. City of Wheaton, 89 Ill App2d 446, 450, 232 NE2d 173 (1967). The drawing of a zoning line 100 feet from Sherman Street rather than at the street, in our opinion, presents a fairly debatable question.

The reasonableness of zoning must be determined under the facts of each case and involves balancing factors of the character of the neighborhood, the use to which nearby property is put, the extent to which property values are diminished by the restriction imposed by the ordinance, and the gain to the public compared wth the hardship imposed upon complaining property owners, against the presumption of the proper exercise of legislative discretion. Goeller v. City of Chicago, 103 Ill App2d 67, 75, 243 NE2d 444 (1968).

There is little question that the property in dispute would be worth substantially more for trailer park use than for its use under the present zoning; and that the record does not show that surrounding property will be greatly damaged by permitting that use. But these conclusions under the facts are not sufficient to overcome the presumption of the validity of the ordinance. Seith v. City of Wheaton, supra, page 451; and see also LaSalle Nat. Bank v. Village of Western Springs, 30 Ill2d 340, 342, 196 NE2d 680 (1964).

Plaintiffs cite Kuiken v. County of Cook, 23 Ill2d 388, 178 NE2d 338 (1961) as illustrative of a situation similar to this case. Similarity exists in the fact that a ques-

174

tion of the extension of a trailer park into an adjacent portion of a tract is involved in each case. However, the strip of land there in question was shown to be "practically valueless for residential purposes because the only access is through an existing trailer park" (page 393). Under the particular circumstances, the court held that the virtual confiscation of the owners' land could not be balanced by a corresponding benefit to the public and that, therefore, the ordinance was void.

While the plaintiffs argue that the strip in issue here cannot be used for farming purposes and is, therefore, without value under its present classification, the record does not support this. Under that general classification the property may be used for single family residence purposes including five home sites, or it may be used by a division into 2 two-family dwelling sites, with access from the abutting public street.

These facts also distinguish Tews v. Woolhiser, 352 Ill 212, 185 NE 827 (1933), cited by plaintiffs for the rule that zoning laws may not be used to maintain open and unused land for "esthetic purposes and buffer zones."

Similarly Davis v. City of Rockford, 60 Ill App2d 325, 330, 208 NE2d 110 (1965) is distinguishable on its facts. We there held that the zoning of an area as a residential buffer zone where residential use was practically impossible, was arbitrary and unreasonable because it would result in a two-block concentration of vacant lots.

The record supports the argument of the County that, when rezoning for the original trailer park was effected, the property in dispute was intended to buffer a new and developing residential area in the City of Aurora.

Plaintiffs argue that this does not result since the same single-family residences could be erected in the strip as there are across the street to the north and that these would then adjoin the trailer court at their rear line without resulting in a buffer zone. However, this would still result in a use of less density between

the trailer court and the homes on the north side of Sherman. Of course, if the strip were developed with the authorized two-family sites, a transitional area of less density than the trailer court but somewhat more density than the homes across the street would result.

In our opinion the reasonableness of separating the intensive use of the trailer park from the residential area with its less intensive use is fairly debatable under all the facts and circumstances of the case and supports the judgment below. See Evanston Best & Co., Inc. v. Goodman, 369 Ill 207, 210, 16 NE2d 131 (1938).

We, therefore, affirm.

Affirmed.

MORAN, P. J. and DAVIS, J., concur.