STEPHANIE QUINTON, MARVIN QUINTON, MARGARET S. EVAN, JOHN EVAN, SHIRLEY E. FRENCH, WALTER A. FRENCH, PATRICIA MORECRAFT AND CLARA BARTON — MENLO PARK EDISON HEIGHTS CHAPTER OF CECA, A NON-PROFIT ASSOCIATION OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS, v. EDISON PARK DEVELOPMENT CORP., A CORPORATION OF THE STATE OF NEW JERSEY, JAMES ROSSI, BUILDING INSPECTOR OF THE TOWNSHIP OF EDISON, AND THE TOWNSHIP OF EDISON, DEFENDANTS-RESPONDENTS, AND MIKEMITCH OF NEW JERSEY, INC., INTERVENOR-DEFENDANT-RESPONDENT.

Argued November 8 and 9, 1971—Decided December 21, 1971.

*Mr. Frederick C. Mezey* argued the cause for plaintiffs-appellants (*Messrs. Mezey and Mezey,* attorneys).

*Mr. John A. Hoffman* argued the cause for defendant-respondent Edison Park Development Corp. (*Messrs. Wilentz, Goldman & Spitzer,* attorneys).

*Mr. Arthur J. Sills* argued the cause for intrevenor-defendant-respondent (*Messrs. Sills, Beck, Cummis, Radin & Tischman,* attorneys; *Mr. Richard Newman,* on the brief).

*Mr. Roland A. Winter* argued the cause for defendants-respondents Township of Edison and James Rossi, Building Inspector.

*Messrs. Schreiber, Conway, Reiseman & Michals* filed a brief for intervenors Benjamin and Bess Wiesenfeld (*Mr. Sidney M. Schreiber,* of counsel; *Mr. Gerald W. Conway,* on the brief).

The opinion of the Court was delivered by

JACOBS, J. The Appellate Division, in an unreported *per curiam,* affirmed the trial court's summary judgment in favor of the defendant Edison Park Development Corp. We granted certification on the plaintiffs' application. 59 *N. J.* 287 (1971).

Edison Park Development Corp. is a long-term lessee of the 24.5 acre Wiesenfeld tract in Edison Township. The tract is somewhat irregular in shape and has a frontage on the northbound lane of United States Highway Route 1. Although it is wholly within Edison Township its northeasterly side line coincides in part with the border between Edison and Woodbridge Townships. The uses on the Woodbridge side are wholly residential. The area to the south in Edison Township is also wholly residential and is known as "Heights of Edison." The tract is in a general business zone in which retail stores are permitted. With a view towards development, Edison Park entered into a lease dated April 7, 1969 with the defendant-intervenor Mikemitch of New Jersey, Inc. The lease contemplated that Mikemitch would operate a substantial shopping establishment or center to be known as "Modell's Shopper's World."

Edison Park and Mikemitch engaged an architect who prepared plans for the large building which would house

Modell's Shopper's World. The plans included a hundred-foot buffer strip between the Edison Park property and the residences in the Heights of Edison but contained no buffer strip between the property and the residences in Woodbridge though the rear property lines of those residences directly abutted the Edison Park property. Apparently Edison Park and Mikemitch entertained the notion that the requirement for a hundred-foot buffer strip, found in Section 13–G of Edison's Zoning Ordinance, was intended to protect only the nearby residents within Edison Township and not the nearby residents within the adjacent Township of Wood-bridge. Section 13–G reads as follows:

*Buffer Strip.* The owner of a lot or parcel of land having an area in excess of ten acres and upon which is to be built one or more retail stores shall provide a buffer strip one hundred feet in depth along side lot and rear lot lines adjacent to residential uses or zones. The buffer strip shall be continued in its natural state, if adequate, or the owner shall furnish additional suitable planting so as to provide an adequate screen to light and noise that may emanate from the business use or uses.

On July 30, 1970 a building permit was issued to Edison Park authorizing the construction of the building in accordance with the site plan prepared by the architect. However, on October 14, 1970 the Township Attorney advised that the site plan did not comply with Section 13–G in that it did not provide for a hundred-foot buffer strip at the northeasterly side adjacent to the Woodbridge Township line. His view was that the buffer strip was required to protect adjacent residents whether they be Edison residents or Wood-bridge residents. In the evening of October 14, 1970, the Edison Township Council voted to rescind the permit which had been issued to Edison Park, and the Building Inspector addressed a letter to Edison Park advising that the permit had been issued through inadvertence and was rescinded.

During the afternoon of October 14, 1970, the plaintiffs filed their complaint in the Law Division seeking to have the permit vacated and to enjoin any action pursuant to it.

The plaintiffs were nearby residents from Woodbridge Township and an association of Edison Heights residents. The defendant Edison Park filed an answer and cross-claimed against the Township of Edison and its Building Inspector James Rossi who, in due course, filed their answers to the complaint and the cross-claim. Mikemitch of New Jersey, Inc. was permitted to intervene and it filed an answer as well as a cross-claim against Rossi and the Township. Thereafter Edison Park moved for summary judgment and on February 4, 1971 its motion was granted by the trial judge in a letter opinion which had the following to say on the crucial issue as to the meaning and applicability of Section 13–G:

At first blush the position urged by the plaintiffs and the Township would appear to be correct. There is nothing in this section to suggest that any distinction was intended between the degree of insulation to be afforded in-township residential uses and out-of-township residential uses. Considering the general proposition of law that a township may not enact zoning legislation without regard to its effect upon abutting lands in a neighboring municipality one could well take the language of this section to mean that the buffer requirement was universal and without regard to whether a property line coincided with the boundary line of a neighboring municipality in any degree. However, a reading of the entire ordinance as a whole leads to a different conclusion.

The trial judge, stressing that in many of the other provisions in the ordinance dealing with buffer strips the draftsman had included explicit language to the effect that the buffer shall be provided along adjacent residence zones within Edison and adjoining communities, concluded that the omission of such explicit language in 13–G indicated an intent to confine its application to Edison Township residents. He expressed the view that "if the framers wanted to extend the benefit to the adjoining Woodbridge residential use they would have plainly so stated" as they did in other instances. The Appellate Division's affirmance of the summary judgment was "substantially for the reasons expressed in the letter opinion" of the trial court though it added

the observation that Edison Park had provided a thirty-foot side yard, thus affording to the Woodbridge residents "greater protection by way of a side yard than plaintiffs would be entitled to if the subject property were located in a Highway Business Zone in Woodbridge Township abutting residential uses." In this connection we note that a side yard where activities incidental to the business operation may still be conducted is wholly unlike a landscaped buffer strip where no such activities may be conducted; and we note further that what the governing body of Woodbridge has done in the field of zoning is irrelevant here since the issue before us relates to the zoning responsibilities of Edison's governing body and to the meaning and operation of Section 13–G which it embodied in its zoning ordinance.

At oral argument we directed counsel for Edison Township to file a statement as to the governing body's position with respect to the meaning and operation of Section 13–G. In response we have been furnished with a copy of a resolution adopted by Edison's Municipal Council on November 10, 1971. The resolution sets forth that the hundred-foot buffer requirement is intended to be "all encompassing;" that the intent of the Council is to have the buffer strip where the property lines are adjacent to residential uses or zones "even if such lines are in an adjacent municipality so as to ensure fair and equal treatment of all residential areas"; and that it is "the further intent and feeling that the 100′ dimension is entirely reasonable and necessary to protect residential properties from the lights, traffic and noise that accompanies general business uses as provided in section 13–G."

In 1963 Edison adopted a comprehensive amendment of its zoning ordinance. The amendment as originally introduced provided for a general business (GB) zone which permitted retail operations. Though there was provision for side and rear yards there was no provision for a landscaped buffer strip. Residents of Edison Heights whose homes were adjacent to the Wiesenfeld tract evidently were concerned

about the construction of a shopping center on that tract. They were undoubtedly aware, as most of us are, that large shopping centers have played a prominent part in the uglification of American communities. The centers have often brought with them intolerable traffic problems. And they have often been accompanied by disturbing noises, lights, fumes, and congestion, along with unreasonable hours and modes of operation. It may fairly be assumed that all this was brought by the residents of Edison Heights to the attention of the Edison governing body which responded by providing in Section 13–G for a hundred-foot buffer strip with explicit provision for suitable planting, where the natural state is insufficient, so as to provide "an adequate screen to light and noise that may emanate from the business use or uses."

It is true that the draftsman of Section 13–G did not set forth in affirmative terms that the buffer strip shall be applicable to all adjacent residential zones whether they be within or without the geographical limits of Edison Township. But that presumably resulted from the fact that no one mentioned the subject rather than from any deliberate intent to confine the afforded protection to residents of Edison Township alone. To us, elemental decency dictated that all of the surrounding residents be given fair and equal protection, and we have no substantial reason for believing that the members of Edison's governing body ever entertained views to the contrary. Indeed, if in the circumstances at hand the governing body had disregarded the considerations of fairness and had deliberately sought to provide a buffer strip requirement for the side which housed adjacent Edison residents, while excluding any buffer strip requirement for the side which housed adjacent Woodbridge residents, its action would presumably have been stricken in the courts. New Jersey has since early times prided itself on the availability of broad judicial review affording to its citizens wide protection against arbitrary, capricious or unreasonable official conduct. See *Monks v. N. J. State Parole*

*Board*, 58 *N. J.* 238, 248 (1971); *Jaffe, Judicial Control of Administrative Action*, 162, 170, 467, 535 (1965).

Our cases have long recognized the duty of municipal officials to look beyond municipal lines in the discharge of their zoning responsibilities. Thus in *Duffcon Concrete Products v. Borough of Cresskill*, 1 *N. J.* 509 (1949), Chief Justice Vanderbilt pointed out that what may be the most appropriate use of property within a municipality may depend, not only on conditions within the municipality, but "also on the nature of the entire region in which the municipality is located"; he stressed that effective development of the region cannot be made to depend upon "the adventitious location of municipal boundaries, often prescribed decades or even centuries ago, and based in many instances on considerations of geography, of commerce, or of politics that are no longer significant with respect to zoning." *Cf. Jenkins, et al. v. Tp. of Morris Dist. and Bd. of Ed.*, 58 *N. J.* 483, 499–501 (1971).

In *Cresskill v. Dumont*, 15 *N. J.* 238 (1954), the sweeping views expressed in *Duffcon* were invoked in aid of a holding which struck a proposed zoning change mainly at the behest of nonresidents. *Cf. N. J. S. A.* 40:55–47; 40:55–47.1; *Borough of Roselle Pk. v. Tp. of Union*, 113 *N. J. Super.* 87, 91–97 (*Law Div.* 1970). Dumont sought to change an area within its borders from a residence to a business zone so as to enable the construction of a shopping center. Residents of the adjacent boroughs of Cresskill, Demarest and Haworth, along with two residents of Dumont, objected and they were sustained in the trial court. On appeal, this Court affirmed in an opinion which flatly rejected Dumont's contention that "the responsibility of a municipality for zoning halts at the municipal boundary lines without regard to the effect of its zoning ordinances on adjoining and nearby land outside the municipality." The opinion indicated that while such a view might perhaps prevail where there are large undeveloped areas at the borders of two contiguous towns, "it cannot be tolerated where, as here,

the area is built up and one cannot tell when one is passing from one borough to another." 15 *N. J.* at 247. Further on the opinion noted that at very least the officials of Dumont owed a duty to hear the residents from the adjoining towns and give "as much consideration to their rights as they would to those of residents and taxpayers of Dumont"; as it said, "to do less would be to make a fetish out of invisible municipal boundary lines and a mockery of the principles of zoning." 15 *N. J.* at 247. In *Barone v. Bridgewater Tp.,* 45 *N. J.* 224 (1965), Justice Hall noted that under *Dumont* a municipality must, in its own zoning, consider the *"adverse* effects thereof on its neighbor." 45 *N. J.* at 235; cf. Haar, "Regionalism and Realism in Land-Use Planning," 105 *U. Pa. L. Rev.* 515, 526 (1957).

In *Kunzler v. Hoffman,* 48 *N. J.* 277 (1966), we sustained a variance to enable the construction of a hospital for the emotionally disturbed which would serve nonresidents as well as residents of the municipality. In the course of his opinion, Justice Proctor cited *Duffcon, supra,* 1 *N. J.* 509, and referred to recent academic expressions to the effect "that local zoning authorities should look beyond their own provincial needs to regional requirements." 48 *N. J.* at 287. And while his opinion did not speak in terms of compulsion, its tenor may be viewed as furthering the cited New Jersey cases which give support here for recognition of the responsibility of the governing body of Edison to deal fairly and equally with the residents adjoining the property in question, whether they be residents of Edison or residents across the invisible line dividing Woodbridge from Edison.

 It must be borne in mind that there could be no rational basis for denying to the adjacent Woodbridge residents the landscaped buffer protection afforded to the Edison residents. The noises from the shopping center, the lights from the store windows, the lights in the parking areas, and the fumes from the cars, along with the other disturbances, will have as much of an adverse effect on the nearby Woodbridge residents as they will on the nearby Edison residents.

If a buffer strip is reasonably required for the protection of the Edison residents it is reasonably required for the protection of the Woodbridge residents who justly claim equal treatment. We are satisfied that, at least in the circumstances presented here, they are entitled to equal treatment and under Section 13–G, as we have construed it, they have properly received it from Edison's governing body.

 Since the summary judgment was grounded on an erroneous interpretation of Section 13–G it must now be set aside and the cause must now be remanded to the Law Division for full trial on all relevant issues. Edison Park contends that Section 13–G violates the uniformity clause in *N. J. S. A.* 40:55–31 and the equal protection and due process clauses in the federal and state constitutions. The trial court did not pass on the contention though it did voice some leanings. *N. J. S. A.* 40:55–31 provides, in pertinent part, that zoning regulations "shall be uniform for each class or kind of buildings or other structures or uses of land throughout each district." It does not prohibit classifications within a district so long as they are reasonable. See *State v. Gallop Building,* 103 *N. J. Super.* 367, 371 *(App. Div.* 1968) ; *cf. Pierro v. Baxendale,* 20 *N. J.* 17, 20 (1955) ; *United Advertising Corp. v. Metuchen,* 42 *N. J.* 1, 7 (1964) ; see also *Wulfsohn v. Burden,* 241 *N. Y.* 288, 150 *N. E.* 120 (1925). On its face the buffer strip requirement in Section 13–G would appear to represent a reasonable classification. It is fairly designed to apply to large tracts which are adjacent to residences and which will house substantial retail business operations such as mammoth shopping centers. These operations may readily and properly be differentiated from neighborhood retail stores or other small tract retail establishments not entailing objectionable incidents.

 The hundred-foot requirement would also appear to be not unreasonable on its face. See *Hedrich v. Kane County,* 117 *Ill. App.* 2d 169, 253 *N. E.* 2d 566 (1969) ; *Armstrong v. McInnis,* 264 *N. C.* 616, 142 *S. E.* 2d 670 (1965) ;

*Penny v. City of Durham,* 249 *N. C.* 596, 107 *S. E.* 2d 72 (1959); *cf. American Society of Planning Officials,* "Zoning Buffers: Solution or Panacea?" (Information Report No. 133) (April 1960). In *Kozesnik v. Montgomery Twp.,* 24 *N. J.* 154, 176 (1957), this Court noted that where a business is recognized as a "potential nuisance" the zoning ordinance should require the business operator "to provide the necessary buffer and not cast the burden on the neighboring owner"; and it indicated that a provision in the ordinance prohibiting quarrying within one thousand feet of dwellings should justly be broadened to include future as well as existing dwellings. 24 *N. J.* at 175–176. In *State v. Gallop Building, supra,* 103 *N. J. Super.* 367, an ordinance provided that in any business zone, every portion of land less than fifty feet from a residence zone shall constitute a buffer zone, on which no business shall be conducted unless there is a 20-foot landscaped area obscuring the residential zone from the business activity. The Appellate Division recognized that the buffer provision was not invalid on its face, pointing out that it contained attributes akin to "setback, rear yard, side line" and similar requirements which have been uniformly upheld "when reasonable in scope." 103 *N. J. Super.* at 371. See *Honigfeld v. Byrnes,* 14 *N. J.* 600, 606 (1954).

The landowner in *Gallop* contended that the ordinance was arbitrary, unreasonable and confiscatory since it deprived him as the "owner of a tract of land having a 100-foot width of the use of 20 feet of that property." The Appellate Division declined to pass on this issue in the proceeding before it, noting, *inter alia,* the insufficiency of the record. It remarked, however, that it may be "eminently proper to require 20 feet or more as a buffer area on premises to be used for a large shopping center or for a similar purpose," and it noted that even as to a small parcel "100 feet in width" it was not prepared to say that the requirement "although perhaps approaching the limits of reasonableness,

is necessarily excessive under all conditions." 103 *N. J. Super.* at 372.

So here we decline to pass on contentions which may not fairly be disposed of on the very limited record before us. Edison Park asserts that Section 13–G is arbitrary as applied to it in that it imposes a greater buffer requirement than that imposed in other zones on other uses, including uses which Edison Park considers "more obnoxious" than its proposed use; whether there are such uses with adjoining residences and whether the problems they present may not soundly be differentiated from the unique problems presented by Edison Park's proposed use should readily appear from suitable enlargement of the record on the remand. Similarly the enlargement, which may include expert as well as other testimony, should shed needed light in connection with Edison Park's contention that the hundred-foot buffer requirement is unreasonable and confiscatory as to it since it would eliminate almost one-third of its property from business use although, under the contention, a lesser buffer requirement would be sufficient to protect the nearby residents and the public health, safety, morals and welfare within the contemplation of the zoning statute. See *N. J. S. A.* 40:55–32; *Pierro v. Baxendale, supra,* 20 *N. J.* at 28; *cf. State v. Gallop Building, supra,* 103 *N. J. Super.* at 371–72.

Reversed and Remanded.

*For reversal and remandment*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and MOUNTAIN—7.

*For affirmance*—None.