SOCONY-VACUUM OIL COMPANY, INCORPORATED, RELATOR, v. TOWNSHIP OF MOUNT HOLLY, A MUNICIPAL CORPORATION IN THE COUNTY OF BURLINGTON; TOWNSHIP COMMITTEE OF THE TOWNSHIP OF MOUNT HOLLY; AND RICHARD F. HOLMAN, BUILDING INSPECTOR OF THE TOWNSHIP OF MOUNT HOLLY, RESPONDENTS.

Argued October 7, 1946—Final Brief Submitted December 12, 1946—Decided January 15, 1947.

Before Justice PERSKIE, at chambers, pursuant to statute.

For the relator, *Starr, Summerill & Lloyd* (*Joseph J. Summerill, Jr.,* of counsel).

For the respondents, *Powell & Parker* (*Harold T. Parker,* of counsel).

PERSKIE, J. This cause is before me on the return of a rule to show cause allowed on July 12th, 1946, why a writ of *mandamus* should not be granted compelling respondents to issue a building permit to relator for the construction of a two bay standard gasoline service station, with driveways, curb cuts, &c., at the southeast corner of High and Ridgeway Streets in the Township of Mount Holly, Burlington County, New Jersey.

The facts are not in substantial dispute. On April 11th, 1946, the Township appointed a zoning commission pursuant to *R. S.* 40:55–33. That commission met on April 22d, 1946, and thereafter proceeded with reasonable diligence to

comply with the statutory provisions for the adoption of a zoning ordinance. Without detailing each step and the date on which it was taken, it will suffice, in my view of the case, simply to point out that this commission submitted its final report on July 2d, 1946. On the same day, the Township Committee met and passed a zoning ordinance on first reading, and passed a motion fixing July 16th, 1946, for the final passage of the ordinance. On the day fixed (July 16th, 1946) the ordinance was adopted after second and final reading. Under the provisions of this ordinance the premises in question were included in "A" Residential District where the proposed use of same as a gasoline service station was prohibited. There is no suggestion that the stated classification was improper, unreasonable or unfair. There would indeed be no basis for such a suggestion. At the last December opening of court, I personally inspected the premises. They are located in the heart of one of the finest residential sections of the Township.

The proofs disclose that between the dates of April 11th, 1946, and July 16th, 1946, namely, on May 17th, 1946, relator secured an option from the owner to purchase the premises. This option admittedly contained the provision that its performance by relator was upon the express condition that the zoning or other law applicable to the premises permit the erection and maintenance thereon of the buildings, structures and equipment required by relator for the operation of a gasoline service station.

Thereafter, in the latter part of May, 1946, a representative of the relator first spoke to the building inspector of the Township in reference to a permit for a service station. The building inspector then stated that a zoning commission had been formed, that they were "working" on an ordinance, that the premises in question were in a residential district and that the use to which relator intended to put the premises would not be permitted. Relator was then clearly put on notice. Later the respondents made their position abundantly clear to the relator. In short, respondents never receded from their position that a zoning ordinance was in the process of preparation and that under this ordinance the proposed use

sought to be made of the property would be prohibited. Nonetheless, relator, on June 19th, 1946, exercised its stated option to purchase the premises in question. The agreement to that end embraced the conditions stated in the option. It is frankly admitted that the purchase by relator was made with "complete knowledge" that the "property was to be classified in 'A' Residential District, under the terms of the proposed ordinance," and that in such district a gasoline service station would not be permitted.

Thereafter, on June 24th, 1946, relator filed with the building inspector the customary form, duly filled out, to which were attached plans and specifications. At the same time it tendered to the building inspector the proper permit fee and was then informed that the money was not payable until the permit was granted. Relator was then again informed by the building inspector that he did not think that the permit would be granted because of the proposed zoning ordinance. No permit has as yet been granted. And, of course, no work has been begun by relator on its proposed service station.

It is true that relator served notice on respondents of its intention to apply for a rule to show cause, on July 5th, 1946, why a peremptory writ of *mandamus* should not issue, and that the rule, as already observed, was made returnable on July 12th, 1942, and that no zoning ordinance had then been adopted. But it is equally true that the zoning ordinance subsequently adopted had then been introduced and advertised, and, as adopted, the prohibitory use of the premises, as a gasoline service station, was no surprise to the relator. I find nothing in the proofs to warrant any suggestion of bad faith on the part of the respondents.

The applicable law, on the aforestated undisputed facts, is in sharp dispute by the respective parties. For the relator it is strongly and earnestly urged that its right to a writ of *mandamus* compelling respondents to issue the building permit is controlled by the prevailing law either at the time it made application for the permit or at the time it obtained the rule to show cause. And since there was no zoning in effect at either time, it was entitled to the permit. On the

other hand, it is urged for respondents, with equal vigor and sincerity, that the status of the law prevailing at the time of the determination of the case is controlling.

My careful study of the capable and helpful arguments and briefs of counsel for the respective parties leads me to the conclusion that the long established precedents are clearly opposed to the position taken for the relator. The following are typical of the cases in support of the result reached.

In the case of *Rohrs* v. *Zabriskie,* 102 *N. J. L.* 473; 133 *Atl. Rep.* 65, relator sought a permit to build a five story apartment house. The permit was refused because the property was in a zone in which the erection of such a building was prohibited by the zoning ordinance. On appeal to the Board of Adjustment, relator's application for relief was denied. Subsequent to that denial the municipality passed an ordinance amending its building ordinance by prohibiting the erection of an apartment house of more than three stories within the municipal limits unless it should be of fireproof construction. It was admitted that the proposed building to be erected by relator did not comply with the amended ordinance. Speaking as to the second question involved, *i. e.,* whether the amended ordinance was a bar to the asserted right of the relator to compel the issuance of a permit because the amended ordinance was passed subsequent to her application for the permit, Chief Justice Gummere (Mr. Justices Kalisch and Campbell concurring) held (at *p.* 475):

"* * * Assuming that the ground upon which the superintendent refused to issue the permit was unsubstantial and that the action of the board of adjustment was not justified under the statute, will this court, when confronted with an ordinance passed in the valid exercise of power conferred upon the municipality, disregard its existence and direct a permit to be granted to this relator to erect a building of the character described in her application, although its erection will be a threat to the public safety, merely for the reason that such ordinance was not passed until after the conclusion of the hearing before the board of adjustment and its action thereon. We have no doubt but that this question should be answered in the negative. Admitting that the ordinance does

not have a retroactive effect, so far as buildings in the course of erection are concerned, it is clearly applicable where the process of construction has not yet been begun. The power to issue a writ of *mandamus* is a discretionary one (*Jones Co.* v. *Guttenberg, 66 N. J. L.* 58; *O'Hara* v. *National Biscuit Co., 69 Id.* 198) ; and it would be an abuse of that power for this court to direct the municipality to grant a permit for the erection of a building the existence of which, if erected, has already been declared by legal authority to be a menace to the safety of the community."

In *Koplin* v. *South Orange, 6 N. J. Mis. R.* 489; 142 *Atl. Rep.* 235, the relator had obtained, on March 5th, 1927, a rule to show cause why a writ of *mandamus* should not issue commanding the building inspector and the Village of South Orange to issue her a building permit. The prohibitory ordinance was enacted on March 22d, 1922. The constitutional amendment anent zoning was adopted by the voters at a special election held on September 20th, 1927, and took effect on October 18th, 1927. On April 3d, 1928, pursuant to the power conferred by such amendment, the legislature adopted *Pamph. L.* 1928, *ch.* 274, and under paragraph 7 (*p.* 698), existing ordinances were saved. *R. S.* 40:55–30 and *R. S.* 40:55–51. Notwithstanding the stated circumstances, the court denied the writ citing with approval the aforestated quoted language of Chief Justice Gummere in *Rohrs* v. *Zabriskie.* The court said (at *p.* 494) :

"We believe that the principle declared in that decision is conclusive of the present case in this court. It therefore follows that the writ applied for must be denied. For we believe it to be immaterial whether the changed conditions arise from an intervening valid municipal ordinance (as in that case) or from a statute enacted pursuant to an amendment of the constitution of the state, as in this case. Under the authority of the Zabriskie case the writ of *mandamus* being discretionary, there can be no vested rights that control the exercise of that discretion, unless a permit is issued and work actually commenced thereunder."

The Koplin case was affirmed in 105 *N. J. L.* 492; 144 *Atl. Rep.* 920, on the opinion below.

Relator stresses the holding in the case of *Builders Construction Co.* v. *Daly,* 10 *N. J. Mis. R.* 861; 161 *Atl. Rep.* 189. In that case the Supreme Court, in a *per curiam* opinion, in discharging the rule for a writ of *mandamus,* said that "It is the status of the municipal legislation at the time the application for this writ was made that must control and not as it stood at the time the application for the permit was made." True, reference was made to this case in the case of *Eastern Boulevard Corp.* v. *Willaredt (Court of Errors and Appeals,* 1929), 123 *N. J. L.* 269, 272; 8 *Atl. Rep.* (2d) 688. But it is also true that the court in the Eastern Boulevard Corporation case points out that under the Koplin case, the holding of which is based upon the holding in the Rohrs case, it was held "that the court should consider the state of law at the time of its decision  *  *  *" and, accordingly refused to exercise its discretionary power to issue a writ of *mandamus.* And it is further pointed out in the same opinion that "Other cases in which the Supreme Court has followed the Koplin and Rohrs cases, when dealing with zoning ordinances, are similar in point of fact." *Cf. Adelman* v. *Williams,* 10 *N. J. Mis. R.* 324; 159 *Atl. Rep.* 148. Here there is no suggestion, much less proof, that the ordinance was either illegal or unreasonable. Here the proofs are undisputed that at the time (July 5th, 1946) of the relator's notice of its application for the rule, and at the time (July 12th, 1946) of the allowance of the rule, the ordinance had then been introduced and had passed first reading. I think that the holding in the Eastern Boulevard Corporation case sustains respondents' position.

Moreover, in my opinion, there can no longer be any question as of the time when the status of the applicable law controls. It is neither the status of the law prevailing at the time of the application for the permit nor the status of the law prevailing at the time of the application or allowance of the rule to show cause. It is the status of the law prevailing at the time of the decision by the court that is controlling. *Cf. Westinghouse Electric Corp.* v. *United Electrical, &c., America (Court of Errors and Appeals,* 1946). 139 *N. J. Eq.* 97, 105, 106; 49 *Atl. Rep.* (2d) 896.

And just as a change in the law between a *nisi prius* and an appellate decision requires the appellate court to apply the changed law, so, by like token, a change of law pending an administrative hearing or act must be followed in relation, as here, to a permit for the doing of a future act. Otherwise the administrative body, here the building inspector whose acts are subject to appeal to or review by this court, would issue a permit contrary to the existing legislation. *Cf. Ziffrin* v. *United States,* 318 *U. S.* 73, 78; 87 *L. Ed.* 621, 625.

While the power to issue a writ of *mandamus* is, as frequently stated by our courts, a discretionary power, the exercise of that power is governed and controlled by well established principles. The discretionary power must not be arbitrarily or capriciously exercised. It must be judicially exercised. It must, in the words of Lord Mansfield, be a "sound discretion guided by law," and must be "governed by rule, not humor." *Cf. State* v. *Then,* 114 *N. J. L.* 413, 416; 177 *Atl. Rep.* 87; *LaBell* v. *Quasdorf,* 116 *N. J. L.* 368, 373; 184 *Atl. Rep.* 750.

Thus when one, as relator here, seeks the right to a writ of *mandamus,* he brings the judicial discretion into play only when he clearly shows or establishes, both factually and legally, that justice and equity require that the relief sought by this extraordinary remedy be given. Compare for analogy, *Eastern Boulevard Corp.* v. *West New York,* 124 *N. J. L.* 345, 346; 11 *Atl. Rep.* (2d) 832; *LaBell* v. *Quasdorf, supra* (at *p.* 372). Relator has made no such showing.

The rule to show cause is discharged, with costs.