179 N.J. Super. 203 (1981)
431 A.2d 163
URBAN FARMS, INC. AND URBAN FARMS SHOPPING CENTER, INC., PLAINTIFFS, RESPONDENTS,
v.
BOROUGH OF FRANKLIN LAKES, DEFENDANT-APPELLANT. URBAN FARMS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
THE BOROUGH OF FRANKLIN LAKES, A MUNICIPALITY UNDER THE LAWS OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 6, 1981.
Decided May 8, 1981.
*206 Before Judges ALLCORN, PRESSLER and FURMAN.
Donald A. Klein argued the cause for the Borough of Franklin Lakes (Winne, Banta, Rizzi & Harrington, attorneys; Joseph L. Basralian of counsel).
Jerome A. Vogel argued the cause for Urban Farms, Inc. and Urban Farms Shopping Center, Inc. (Jeffers, Walter, Tierney, *207 De Korte, Hopkinson & Vogel, attorneys; Robert M. Schwartz on the brief).
The opinion of the court was delivered by PRESSLER, J.A.D.
These appeals, consolidated by the court on its own motion, involve a land-use controversy between the Borough of Franklin Lakes and Urban Farms, Inc., the developer of a proposed nursing home, formerly a permitted special-exception use.
The nursing home development plan here in issue was first presented to the municipality for special-exception approval in 1972 and was ultimately rejected by it in 1977. Urban Farms challenged this rejection by way of an action in lieu of prerogative writs and obtained a judgment directing that it be issued a building permit subject to specified conditions. Franklin Lakes' appeal from that judgment is the first of the appeals now before us. While that appeal was pending, the municipality in 1979 amended its zoning ordinance to eliminate nursing homes as a permitted or conditionally permitted use anywhere within its borders. That action was sustained by a different judge of the Law Division as a valid exercise of the zoning power, and Urban Farms' appeal from the judgment so declaring is the second of the appeals before us. The fundamental issue projected by this complex of litigation is whether this developer can be deprived of the apparently decisive judicial declaration of its rights by a subsequent zoning ordinance barring its proposed use. In the factual circumstances before us and for the reasons hereinafter set forth, we hold that it may not.
According to the record, Franklin Lakes is a small, primarily residential but not wholly developed municipality, in northwestern Bergen County. Its geographical area is some ten square miles and its population has increased from 7,550 in 1970 to 8,754 *208 in 1980.[1] Urban Farms owns a parcel of land just under 26 acres in size, located in a residential zone at the southwest intersection of two main local arteries, Franklin Lake Road and High Mountain Road. Despite the residential zoning of the subject premises, they are virtually surrounded by commercial, public and quasi-public uses, including a privately-owned golf club complex, a public elementary school, a parochial elementary school and convent building, a municipal fire house, a gasoline station, a shopping center and, adjacent to the shopping center, a sewage treatment plant, proposed to be enlarged to handle the projected needs of the nursing home.
The zoning ordinance, prior to its 1979 amendment, provided for five categories of permissible conditional uses in the residential districts of the borough, including churches and church-related uses, hospitals and nursing homes, public and private elementary and secondary schools, golf courses, and nonprofit recreational facilities.[2] Approval of conditional uses were made subject to prior administrative findings that the specifically proposed use "will not be detrimental to the health, safety and general welfare of the community and is reasonably necessary for the convenience of the community and will not be injurious to the remainder of the district as a place of residence." The conditional uses were also subject to minimum bulk requirements dependent upon the category of use involved. In the case of nursing homes, the limiting schedule required a 25-acre minimum lot size, 200-foot road frontage and setback from all property lines, 10% maximum building coverage, 2-story maximum *209 height, specified parking and buffer strip requirements and a specification of permitted accessory uses.
In 1972 Urban Farms, on the basis of a plan fully conforming with the ordinance requirements, sought and obtained special exception approval for a nursing home on the site in question. The approval was, however, conditioned upon the developer obtaining a certificate of need from the State Department of Health within one year. Urban Farms timely applied for the certificate of need but because of a Department of Health moratorium on nursing home approvals, was not successful in obtaining the certificate until January 1976. That certificate, in accordance with the submitted application, granted approval for a facility containing 120 long-term nursing beds subject to the developer's commitment to make at least 42 of those beds available for Medicaid recipients.
Since Urban Farms had not obtained its certificate of need within the one-year period prescribed by the original approval of its special exception application, it was required to reapply to the board of adjustment. Because of neighborhood opposition to the nursing home proposal which had developed in the interim, including opposition by a number of neighbor-attorneys, each representing himself, the board of adjustment proceedings were inordinately protracted, consuming 12 sessions and the presentation by Urban Farms of the testimony of a variety of experts, including an engineer, architect, traffic planner, nursing home administrator and real estate experts. The objectors presented countering experts. Ultimately, in December 1976 the board of adjustment, by a commendably thorough and detailed resolution, recommended to the governing body that it approve the special exception use subject to various terms and conditions to which the applicant made no objection.[3] The mayor and council, *210 however, rejected the recommendation and disapproved the application.
It was the view of the trial judge, based on the record of the local administrative proceedings, that the governing body's disapproval was arbitrary and capricious, and we agree substantially for the reasons expressed by Judge Petrella in his oral opinion. We add, however, several observations.
First, despite the unwarranted findings by the mayor and council to the contrary, the record is overwhelmingly supportive of the conclusion that the proposed use meets the negative criteria of both the ordinance itself and the enabling legislation pursuant to which the special exception was sought. Indeed, the minimal intensity of the use in relation to the size of the parcel, its location at an intersection generally devoted to nonresidential uses, the capacity of the involved roads to absorb whatever traffic the nursing home might generate, and the proposed colonial architecture of the planned single-story structure are factors which, among others, leave no question as to the exceptional suitability of the site for the proposed use and its minimal intrusion on the neighboring residential uses.
Even more compelling, however, than its compliance with the negative criteria is the compliance by the proposed use with the affirmative criterion of the ordinance, namely, its reasonable necessity for the convenience of the community. In this context we note first that a special exception or conditional use permitted by local zoning ordinance is not necessarily dependent upon a showing by the applicant that the use will *211 affirmatively serve a specific zoning desideratum. The so-called special reasons prerequisite to the grant of a use variance were never intrinsic to the concept of a special exception or conditional use. Rather, a special exception or conditional use is a permitted use, subject to specific special controls and conditions. It is, moreover, a use which the municipality recognizes as not incompatible with the uses in the zone otherwise permitted but at the same time one which is not necessarily suitable everywhere in the district. See Verona, Inc. v. West Caldwell, 49 N.J. 274, 282 (1967); Tullo v. Milburn Tp., 54 N.J. Super. 483, 490-491 (App.Div. 1959). The concept of a use variance, on the other hand, relates to a use prohibited in the district. Granting of both a special exception and a use variance was, under former N.J.S.A. 40:55-39, dependent upon a showing that the negative criteria of nonimpairment of the zone plan and lack of detriment to the public good were met.[4] But only the grant of a use variance required proof of special reasons grounded in legitimate zoning considerations  the so-called affirmative criterion. Thus, it is apparent that the ordinance here in question, by imposing upon special exception uses the further requirement of a showing of their reasonable necessity for the convenience of the community, in effect superimposed upon the special exception use a special reasons criterion, thereby creating a hybrid special exception-use variance category in which the special exception use is virtually indistinguishable from the use variance. And in this posture it further appears that if an applicant for a special exception use were to have met all of the criteria of the ordinance, both affirmative and negative, he would thereby also have demonstrated his entitlement to a use variance as well.
We further note that the uses permitted by this ordinance as special exceptions in a residential zone are, to a large extent, within that category of uses generally classified as public or quasi-public institutional uses which are so inherently beneficial *212 to the community that, whether or not nonprofit, they are susceptible to rejection by the municipality only if the negative criteria are not met. See, e.g., so holding Roman Catholic Diocese of Newark v. Ho-Ho-Kus, 47 N.J. 211 (1966); and Black v. Montclair, 34 N.J. 105 (1961) (parochial schools); Burton v. Montclair, 40 N.J. 1 (1963) (nonparochial private school); Three L. Corp. v. Newark Bd. of Adj., 118 N.J. Super. 453 (Law Div. 1972) (private day nursery); Kunzler v. Hoffman, 48 N.J. 277 (1966) (private hospital for the emotionally disturbed).
We have no doubt that a nursing home, whether or not nonprofit, comes within the inherently beneficial category, particularly where, as here, a certificate of need has been granted and more than a third of its beds have been committed to Medicaid recipients, i.e., indigents. As the Supreme Court explained in N.J. Ass'n of Health Care Facilities v. Finley, 83 N.J. 67 (1980), in which it upheld a regulation of the State Department of Health requiring long-term nursing homes to provide a reasonable number of beds for Medicare patients:
"Even though privately owned, nursing homes, like other health care facilities, and quasi-public entities and are subject to extensive regulation in the public interest.... A new nursing home must demonstrate the need for nursing services in the area to be served to avoid any unnecessary duplication of health care services. N.J.S.A. 26:2H-8 provides that no certificate of need shall be issued unless the action proposed in the application, among other things, "will contribute to the orderly development of adequate and effective health care services." Under N.J.S.A. 26:2H-12(b)(2) a license for a health care facility "shall be issued by the department upon its findings that the premises * * * and standards of health care services are fit and adequate and there is reasonable assurance the health care facility will be operated in the manner required by this act and rules and regulations thereunder." The foregoing statutory provisions make it clear that the Department has the power to require a health care facility, within reasonable limits, to provide needed health care services in the area served by it and to condition licensure on the providing of "fit and adequate" service." [at 78-79]
This public-interest aspect of nursing homes and the consequent comprehensive scheme of statutory and regulatory control over them has several significances here in respect both of the developer's right to the conditional use and the validity of the subsequent zoning ordinance amendment eliminating nursing homes as a permitted conditional use.
*213 Insofar as the conditional use itself is involved, these considerations, in our view, conclusively vitiate the borough's argument that the ordinance, in referring to the reasonable necessity of the special exception use for the convenience of the community, means only the convenience of the borough itself, and further, that the borough itself, by virtue of its small and presently youthful population, does not need a nursing home. Clearly, it is a virtual truism of the modern land-use canon that zoning ordinances must be regionally oriented in their provisions, prohibitions and concerns. Indeed, among the innovations of the Municipal Land Use Law of 1975 are the statements that among the purposes of the act is its intent "to encourage municipal action to guide the appropriate use or development of all lands in this State, in a manner which will promote the public health, safety, morals and general welfare" and "to provide sufficient space in appropriate locations for a variety of agricultural, residential, recreational, commercial and industrial uses and open space, both public and private, according to their respective environmental requirements in order to meet the needs of all New Jersey citizens." N.J.S.A. 40:55D-2(a), (g). The insularity and parochialism of the Chinese wall theory of municipal zoning has long since been discredited. See, e.g., Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481, 537 (1977); Quinton v. Edison Park Development Corp., 59 N.J. 571, 578 (1971); Duffcon Concrete Products v. Cresskill, 1 N.J. 509, 513 (1949). It is now clearly intolerable.
But even beyond the theoretical generality of the impact of regional concerns upon municipal zoning is the necessity of a regional approach in the provision of those licensed health care facilities which require a certificate of need. As a result of N.J.S.A. 26:2H-1 et seq., the comprehensive health care facilities planning legislation, health care facilities may no longer be established and operated at will. Nor may they define or limit their own area of operation. Their establishment now requires a prior determination by the State Department of Health that the general community to be served by the proposed facility  *214 not just the municipality in which it is to be located  requires the services of that facility. In effect, therefore, and at least in respect of health care facilities, the ordinance standard of reasonable necessity for the convenience of the community, if not superseded by the judgment of the State Department of Health, must nevertheless in its application and substantive content accord with and incorporate that judgment.
We are further satisfied that the ordinance itself did not intend to define "community" coextensively with the borough. The special exception uses permitted by the ordinance, except for public schools, are inherently of such a nature as to require the active support and participation of a population base greater than Franklin Lakes' own some 8,700 inhabitants. That population is obviously inadequate to warrant, for its exclusive use, hospitals and nursing homes, or private and parochial schools, or churches, or golf clubs, or nonprofit recreational facilities. These are, moreover, typically and traditionally the kinds of institutional uses which draw participants from a large general area, not limited to a single, small suburban town. Thus, Franklin Lakes, for example, has no hospital within its municipal boundaries. Undoubtedly some of its population from time to time require hospital services. Undoubtedly they obtain them outside of the territorial limits of the borough and are wholly dependent on out-of-town hospitals.
Having determined that Urban Farms, on the basis of the record and the board of adjustment's evaluation thereof, was, as a matter of law, entitled to approval of its special exception application, we address the question of the efficacy of the borough's attempt to zone out nursing homes during the pendency of its appeal from Judge Petrella's judgment in favor of the applicant. The technique employed by the borough in its effort to achieve legislatively what it was unable to achieve by judicial action was an ordinance amendment simply eliminating nursing homes as a permitted conditional use and leaving the balance of the conditional use provisions of the ordinance as originally *215 enacted. We are satisfied that that legislative action is invalid in respect of this developer's proposed use.
First, for the reasons we have already stated, we regard the developer's proofs before the board of adjustment and the findings by the board to be tantamount to an application for and recommendation of a use variance the denial of which by the mayor and council would be no less arbitrary and capricious than was its denial of the application for a conditional use. If the application had been styled as one seeking a variance to permit a prohibited use, its grant would clearly not have been subject to vitiation by a further prohibitory statement made by a subsequent zoning ordinance amendment. In our view, therefore, and under these circumstances, the effect of the judicial recognition of the developer's right to a special exception use should be subject to no greater degree of subsequent municipal interference or abrogation than it would have been had the developer sought and been declared entitled to a use variance.
More significantly, however, we conclude that the ordinance amendment is invalid because of the unreasonable distinction it draws between hospitals, a continued permitted conditional use, and nursing homes, now a prohibited use. The present land use law, like its predecessor, mandates that "[t]he regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of buildings or other structures * * *." N.J.S.A. 40:55D-62(a). Compare N.J.S.A. 40:55-30. The statutory requirement for district-wide uniformity is a matter of constitutional imperative. As the Supreme Court observed early on in the evolution of modern zoning law, "The equal protection clause of the Fourteenth Amendment secures equality of right by forbidding arbitrary discrimination between persons similarly circumstanced. Classification is consistent with this principle if it be reasonably based in the public policy to be served." Schmidt v. Newark Bd. of Adj., 9 N.J. 405, 418 (1952). See, also, Pierro v. Baxendale, 20 N.J. 17 (1955); Morris v. Postma, 41 N.J. 354 (1964).
*216 Nursing homes and hospitals are uses which in our view are so similar both physically and functionally that their disparate classification for zoning purposes could be justified only on compelling public policy grounds. We perceive none. We are aware that this court reached a different conclusion in Bellings v. Denville Tp., 96 N.J. Super. 351 (App.Div. 1967). But we point out that Bellings was decided prior to the virtual revolution in health care facility control and regulation effected by subsequent federal and state legislation and implementing administrative rules.[5] It is made abundantly clear by this complex of legislation that residential health care facilities of whatever nature constitute an integrated, comprehensive system of health care delivery service subject to unified and integrated state policy, planning and control. See, e.g., N.J.S.A. 26:2H-1, reposing in the State Department of Health "the central, comprehensive responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services ... and all public and private institutions, which State, County, municipal, incorporated or not incorporated, serving principally as residential health care facilities, nursing or maternity homes or as facilities for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition...." The State and Federal Governments having thus integrated nursing homes and hospitals within a single system for purposes of control and regulation and subjecting both to the same certificate of need prerequisites, we are satisfied that they cannot be disparately treated for zoning purposes  at least not on the basis of any legitimate public policy which would justify the exclusion of one and inclusion of the other within the same zone.
*217 We have referred to the physical and functional similarity between these two types of facilities. We recognize that they are not identical and that it is arguable that hospitals, because they provide emergency services and serve a broader spectrum of the community, may be of greater benefit to the public welfare than are nursing homes. Nevertheless, we are satisfied that the very factors which may suggest a potentially greater public need for hospitals also make them functionally more intrusive upon residential neighborhoods. Nursing homes typically do not involve regular and routine emergency ambulance service and they typically generate less patient-visiting. Thus, whatever lesser public urgency may be entailed in the services nursing homes render as compared with those of hospitals is offset by their greater functional compatibility with the residential areas in which they are located.
Since we base our reversal on the invidious and unjustifiable distinction made by the amendatory ordinance between similar uses, we need not decide the question raised by both parties regarding the retrospective application of the amendment. We do, however, feel obliged to comment on this issue in view of the trial judge's expressed assumption that a municipality has an absolute, unqualified and unfettered right to respond to a judgment in favor of a land-use applicant by amending its ordinance in order to bar the use approved by the court. We understand the stare decisis basis for the trial court's view. See e.g., Burcam Corp. v. Medford Tp. Planning Bd., 168 N.J. Super. 508, 512 (App.Div. 1979). We regard it, nevertheless, to be so fundamental an overstatement of the scope of municipal power as to require us to address it.
We do not intend to suggest that a zoning ordinance amendment responsive to a court's judgment may not ordinarily have retroactive effect. Our point is that it is not automatically entitled to such effect and should not be accorded such effect where doing so would undermine existing special equities without accomplishing any offsetting service to the public interest in the zoning sense.
*218 An historical analysis of the development of the retroactivity principle in respect of zoning ordinance amendments demonstrates that considerations of patent advantage to the public have always constituted the jurisprudential core of that doctrine. One of the earliest and most frequently cited cases in which the doctrine was involved was Rohrs v. Zabriskie, 102 N.J.L. 473 (Sup.Ct. 1926), dealing with an amendment of the Ridgewood building code passed during the pendency of litigation which barred erection of any residential structure over three stories in height unless it was of fireproof construction. The litigation had been brought to challenge the denial of a building permit for a nonfireproof five-story structure despite its conformance with the then state of the building code. Chief Justice Gummere accorded the amendment retroactive effect, holding as follows:
... [W]ill this court, when confronted with an ordinance passed in the valid exercise of power conferred upon the municipality, disregard its existence and direct a permit to be granted to this relator to erect a building of the character described in her application, although its erection will be a threat to the public safety, merely for the reason that such ordinance was not passed until after the conclusion of the hearing before the board of adjustment and its action thereon. We have no doubt but that this question should be answered in the negative. Admitting that the ordinance does not have a retroactive effect, so far as buildings in the course of erection are concerned, it is clearly applicable where the process of construction has not yet been begun. The power to issue a writ of mandamus is a discretionary one * * *; and it would be an abuse of that power for this court to direct the municipality to grant a permit for the erection of a building the existence of which, if erected, has already been declared by legal authority to be a menace to the safety of the community. [At 475.]
In Eastern Boulevard Corp. v. Willaredt, 123 N.J.L. 269 (E. & A. 1939), retroactivity was accorded a zoning ordinance amendment which limited apartment houses in the zone in question to 2 1/2 stories and accommodating not more than three families. The factual background is instructive. There the municipality, West New York, had sometime earlier enacted an amendment precisely so providing. The first such amendment was challenged in certiorari proceedings, and during the pendency thereof plaintiff applied for a permit for a five-story, 71-family building. The permit was denied. The original ordinance was *219 then held to be invalid because of procedural irregularities attendant upon its enactment, and almost immediately thereafter it was properly reenacted. During the interim between the invalidation and the reenactment of the ordinance, plaintiff sought a writ of mandamus requiring issuance of a building permit for his proposed use. The writ was denied.
And in Socony-Vacuum Oil Co., Inc. v. Mt. Holly Tp., 135 N.J.L. 112 (Sup.Ct. 1947), the court dealt with a situation in which plaintiff, during the process of municipal adoption of its first zoning ordinance, sought a building permit for a gasoline station. The building inspector advised plaintiff that the premises in question were about to be residentially zoned and accordingly denied the permit, which plaintiff then sought by judicial action. During the pendency of the litigation the zoning ordinance was finally adopted and the premises, found by the court to be located in one of the town's "finest residential sections," were indeed residentially zoned. The court denied the writ of mandamus sought by plaintiff, noting that even prior to the completion of plaintiff's purchase, the municipal officials "never receded from their position that a zoning ordinance was in the process of preparation and that under this ordinance the proposed use sought to be made of the property would be prohibited." 135 N.J.L. at 113-114.
We turn now to the modern decisions applying the retroactivity cases. Illustrative are Allendale Congregation of Jehovah's Witnesses v. Grossman, 30 N.J. 273 (1959), app. dism. 361 U.S. 536, 80 S.Ct. 587, 4 L.Ed.2d 538 (1960); Morris v. Postma, 41 N.J. 354 (1964), and Donadio v. Cunningham, 58 N.J. 309 (1971). In Allendale retroactivity was accorded to an ordinance adopted during the pendency of board of adjustment hearings which amended the zoning ordinance to require off-street parking for places of public assembly. In Morris v. Postma and Donadio v. Cunningham post-judgment amendments of zoning ordinances were accorded retroactive effect, both cases involving amendments designed to eliminate as permitted uses specific types of restaurant operations, namely, drive-ins and fast-food establishments, *220 respectively. Both cases also involved earlier and ineffective municipal legislative attempts to accomplish those results. The basis for the retroactivity holding in Donadio was succinctly explained thus: "A municipality should, in the public interest, be afforded an opportunity to amend its zoning ordinance and to take an appeal from an adverse decision." 58 N.J. at 323. And see, also, L.P. Marron & Co. v. River Vale Tp., 54 N.J. Super. 64 (App.Div. 1959) (retroactivity accorded to an ordinance amendment barring gasoline stations in a specific zone); Crecca v. Nucera, 52 N.J. Super. 279 (App.Div. 1958) (retroactivity accorded to an ordinance amendment barring bowling alleys); Roselle v. Moonachie, 48 N.J. Super. 17 (App.Div. 1957) (retroactivity accorded to an ordinance amendment barring trailer camps).
Although not heretofore so articulated, there is a significant synthesizing theme binding these decisions together. In each of them the retroactivity principle was applied either to permit a municipality, as in Donadio, to rectify its zoning ordinance in order to perfect a legislative policy decision therein expressed by it but imperfectly so, or to permit a municipality to give initial legislative consideration to serious and substantial land-use planning concerns theretofore unaddressed by its ordinance, such as in Allendale, L.P. Marron & Co., Crecca and Roselle, all supra. When these concerns are involved, the public interest clearly justifies protection by way of the municipal opportunity to amend its ordinance after and in response to an adverse judgment. But we do not regard either of these public-interest rationales to be implicated or relevant in the situation now before us. Here we are dealing with an inherently beneficial use serving the general welfare, to which the municipality had already given its deliberate legislative attention and had decided to permit as a conditional use predicated upon a showing of its reasonable necessity for the convenience of the community. It thereby encouraged a prospective developer to undertake the considerable commitment in time and expense involved in pursuing that use. There is nothing in this record to suggest that the public interest would *221 be more advantaged by now eliminating that use than it would be by continuing to permit it. Proving itself entitled to conditional use approval should, under these circumstances, afford the developer more than a Pyrrhic victory. See Oakwood at Madison, Inc. v. Madison Tp., 72 N.J. 481, 549-550 (1977).
It is not only the absence of the customary public-interest underpinnings of retroactive application which here concerns us but also what we have already alluded to as the developer's special equities. We have long adhered to the principle in this State that substantial economic reliance by a developer on a building permit issued to him prior to a zoning ordinance amendment will defeat its retroactivity. Thus, in Tremarco Corporation v. Garzio, 32 N.J. 448 (1960), the Supreme Court stated
There is no easy formula to resolve issues of this kind. The ultimate objective is fairness to both the public and the individual property owner. We think there is no profit in attempting to fix some precise concept of the nature and quantum of reliance which will suffice. Rather a balance must be struck between the interests of the permittee and the right and duty of the municipality through planning and the implementation of that scheme through zoning "to `make, ordain and establish all manner of wholesome and reasonable laws, not repugnant to the Constitution,' as may be deemed to be `for the good and welfare of the commonwealth, and all the subjects of the same.'" Roselle v. Wright, 21 N.J. 400, 408-409 (1956). This right is one of which the permittee is deemed to be aware. [At 457]
We do not regard the issuance of a building permit as a sine qua non to the applicability of the substantial reliance doctrine. See Kruvant v. Cedar Grove, 82 N.J. 435 (1980). Rather, we are of the view that its applicability requires a weighing of such factors as the nature, extent and degree of the public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded, the extent to which his undertaking has been at any point approved or encouraged by official municipal action, and the extent to which, under the circumstances and as objectively determined, he should have been aware that the municipality would be likely to change the ordinance prior to actual commencement of construction. These are the factors *222 constituting the developer's special equities, and if they outweigh the public interest concerns, they should also operate to bar postjudgment retroactivity of a zoning ordinance amendment.
We are satisfied from the record before us that the developer's special equities here are not only substantial but also that they are superior to the public interest purportedly served by the amendment. We have already addressed the dubiousness of the amendment vis-a-vis advancement of the public interest. Balanced against it are these critical factors. The use here was specifically permitted by the ordinance, albeit conditionally. Approval of the use required the developer to show that at the specific location proposed therefor it would serve the public interest and not prejudice the zone plan. The developer here made those showings. The specific use was, moreover, already once approved by the municipality, subject to the developer's obtaining a certificate of need. The certificate of need constituted assurance of the public advantage to be served by the use. The developer patently expended substantial sums for project development on the basis of the original approval. It had no reason to believe that the ordinance would be amended in midstream after its seven years of dedication to the project which followed the municipality's original approval. For all of these reasons, we are satisfied that retroactive application in these circumstances would be fundamentally unfair.
We make one final comment. While we recognize that there are circumstances in which the municipality is appropriately permitted to effect a retroactive postjudgment amendment of its zoning ordinance in specific response to that judgment, nevertheless the potential anomaly of this technique is both apparent and troublesome, particularly where the purpose of the amendment is neither to fill a serious gap in the original ordinance nor to properly reenact a provision thereof adjudicated ineffective either for procedural or substantive reasons. It appears to us to be wholly antithetical to both the integrity and *223 the legitimacy of the judicial process for a municipality to submit its land-use action to the scrutiny and review of the court, to participate in the litigation in apparent good faith, to thus impose upon the financial resources of the court, the developer and its own taxpayers, and then, when the decision is adverse to it, to be free to render the entire proceeding a charade and the judgment of the court a nullity by recourse to a legislative action which was available to it from the beginning. We are of the view that while a municipality should not be precluded from so doing where the public interest requires and where there are no countervailing equities, nevertheless it should, in these circumstances, bear the burden of proving that its legislative abrogation of the court's judgment does indeed genuinely serve the public interest.
The judgment of the trial court, appealed in A-3996-77, directing the issuance of a building permit to Urban Farms, Inc., subject to the conditions therein set forth, is affirmed. The judgment of the trial court, appealed in A-4809-79, adjudicating the validity of the zoning ordinance amendment barring nursing homes, is reversed.
NOTES
[1] See State of New Jersey, Department of Law and Industry, Division of Planning and Research, Office of Demographic and Economic Analysis, "New Jersey Preliminary Census Counts of Population and Housing: April 1, 1980, at 5 (Dec. 1980).
[2] As to the last of these categories, the ordinance describes such facilities as those of Boy Scouts, Girl Scouts, Boys Clubs, Y.M.C.A., Y.W.C.A., Y.M.H.A., Y.W.H.A., 4-H Clubs, Campfire Girls, and the like.
[3] The special exception application was made pursuant to the former zoning legislation, N.J.S.A. 40:55-30 et seq., and particularly N.J.S.A. 40:55-39(b), repealed by the Municipal Land use Law of 1975, N.J.S.A. 40:55D-1 et seq., effective August 1, 1976. The formerly denominated special exception use of N.J.S.A. 40:55-39(b), within the original jurisdiction of the board of adjustment, was redesignated "conditional use" by N.J.S.A. 40:55D-67 and allocated to the original jurisdiction of the planning board. While N.J.S.A. 40:55D-67 requires the local zoning ordinance to prescribe "definite specifications and standards" governing conditional use approval, it does not contain the statutory limitation of N.J.S.A. 40:55-39, namely the requirement that approval will not result in "substantial detriment to the public good and will not substantially impair the intents and purpose of the zone plan and zoning ordinance." See, e.g., Reinauer Realty Corp. v. Paramus, 34 N.J. 406 (1967).
[4] See, also, fn. 3 supra.
[5] See the National Health Planning and Resources Development Act of 1974, 42 U.S.C.A. § 300k et seq., replacing the Comprehensive Health Planning and Public Health Services Amendments of 1966. And see N.J.S.A. 26:2H-1 et seq.