YM–YWHA OF BERGEN CTY., PLAINTIFF-RESPONDENT, v. TP. OF WASHINGTON, COUNCIL OF THE TP. OF WASHINGTON, RUDOLPH J. WENZEL, MAYOR, PLANNING BOARD, PETER BRIC SILVIA, ZONING OFFICER, PATRICK MORRONE, CONSTRUCTION OFFICIAL IN TP. OF WASHINGTON IN CTY. OF BERGEN, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 4, 1983—Decided November 16, 1983.

Before Judges MICHELS, KING and EDWARD GAULKIN.

*Avrom J. Gold* argued the cause for appellants (*Mandelbaum, Salsburg, Gold & Lazris,* attorneys; Barry R. Mandelbaum, on the brief).

*Elliot W. Urdang* argued the cause for respondent (*Urdang & Ramp,* attorneys).

The opinion of the court was delivered by

KING, J.A.D.

Defendants appeal from an order of the Law Division compelling issuance of soil removal and partial building permits. The matter was treated in a summary fashion. *See R.* 4:67. For reasons to be explicated, we conclude that a remand for a plenary hearing is required on these issues: (1) whether plaintiff materially and substantially complied with the conditions attached to the final site-plan approval within two years of its issue, and (2) if there was no such compliance whether the

municipality unreasonably thwarted by delay or otherwise plaintiff's attempts to comply with the conditions within that two-year period, thereby making performance by plaintiff within the time limit impossible. If the judge on remand finds material and substantial compliance within the two years, the permits should issue. If there were no material and substantial compliance because of unconscionable conduct by the municipal authorities, the permits also should issue. If the two-year period expired without any application for extension and the plaintiff had not materially and substantially complied with the conditions through no fault of the municipality, the Township may lawfully refuse the permits because of the expiration of the two-year period of protection from zoning change under *N.J. S.A.* 40:55D–52(a).[1]

Plaintiff, YM–YWHA of Bergen County, is a non-profit organization whose goal is to serve the cultural and recreational needs of all residents of the community. In 1979 plaintiff contracted to buy a tract of land in Washington Township—identified on the township tax map as Lot 3, Block 3202. Later that year, plaintiff applied to defendant Washington Township Planning Board for preliminary site plan approval for the building of a cultural, recreational center on that tract. At the time of plaintiff's application for preliminary approval, the proposed structure was a permitted use under the municipality's zoning

---

[1]*N.J.S.A.* 40:55D–52(a) states:

> The zoning requirements applicable to the preliminary approval first granted and all other rights conferred upon the developer pursuant to section 37 of this act, whether conditionally or otherwise, shall not be changed for a period of 2 years after the date of final approval; provided that in the case of major subdivision the rights conferred by this section shall expire if the plat has not been duly recorded within the time period provided in section 42 of this act. If the developer has followed the standards prescribed for final approval, and, in the case of a subdivision, has duly recorded the plat as required in section 42 of this act, the planning board may extend such period of protection for extensions of 1 year but not to exceed three extensions. Notwithstanding any other provisions of this act, the granting of final approval terminates the time period of preliminary approval pursuant to section 37 of this act for the section granted final approval.

ordinance. While plaintiff's application for preliminary site approval was pending, an amendatory ordinance to the zoning scheme pertaining to plaintiff's property was introduced before the council of Washington Township on January 1, 1980. The amendatory ordinance eliminated plaintiff's proposed use of the tract from the list of permitted uses in that zone. Nevertheless, on February 6, 1980 preliminary site approval was granted by the defendant planning board. Less than a month later, on March 3, 1980, the amendatory ordinance which excluded the proposed use of plaintiff's property was adopted.

Sometime within this period, a group of Washington Township citizens started a suit challenging the grant of preliminary approval to plaintiff by the planning board. While this suit was pending, the plaintiff applied for final site plan approval which was granted on October 1, 1980. This final site plan approval was subject to four major conditions:

(1) That the final site plan approval be contingent upon Bergen County Planning Board approval;

(2) That the applicant enter into an agreement with the municipality that it will construct and install all the improvements set forth in the final site plan, at its cost and expense, with appropriate performance and maintenance guarantees, and provision for the payment of the municipality's legal and engineering expenses concerning the application and inspection and installation of said improvements. . . .

(3) Final subdivision approval be contingent upon the Superior Court of New Jersey affirming the action of the Planning Board's preliminary site plan approval or such terms and conditions as the Superior Court of New Jersey hereinafter orders in the pending litigation;

(4) That final subdivision approval be subject to further review and approval of the landscaping plan, the submission of which to the Planning Board shall be no later than the submission of the architectural plans to the appropriate official of the Township and prior to the planting of any landscaping vegetation.

From the time of the conditional final site plan approval on October 1, 1980 until October 1, 1982 a number of exchanges between the parties culminated in the Township's assertion that plaintiff's proposed use of its land was no longer permitted and in plaintiff's institution of the present suit. This dispute concerns the parties' disagreement over whether the conditions necessary for final site plan approval were met by the October 1, 1982 deadline and upon the interpretation of *N.J.S.A.* 40:55D--

52, which insures developers that the zoning requirements applicable to their land at the time preliminary approval was granted will not be changed for two years after the date of final approval. Because the Law Division judge decided the case as a summary matter, without taking evidence, the pertinent facts must be gleaned from the pleadings and the allegations of the parties in the various documents submitted to the court.

In general, the two parties take contradictory views of the events leading to this litigation. It is defendants' position that plaintiff failed to meet the conditions necessary for final site approval within the statutory two-year protective period and consequently the use of the land is now controlled by the amendatory ordinance which prohibits plaintiff's proposed use. On the other hand, plaintiff denies that it was delinquent and alleges that it did in fact comply with the conditions of final site approval within the statutory period, or, at least, complied with the conditions that were within its power. Plaintiff alleges that any failure on its part to comply with the conditions of final site approval was due to the "dilatory and ultimately antagonistic tactics of defendants."

Two of the conditions necessary to final site approval were fulfilled as early as December 1980. On November 19, 1980 the law suit challenging preliminary approval was dismissed by final judgment and no appeal was taken. The Bergen County planning board approved plaintiff's project in December 1980. The plaintiff had closed title on the subject property on August 1, 1980. Plaintiff alleges that both before and after closing, extensive work was done on engineering and architectural aspects of the project. In addition, plaintiff alleges that due to its non-profit status it had to secure financial backing for the project through fund-raising efforts which required extensive expenditures. Plaintiff claims these activities were carried on into the early part of 1982. Because of the type and size of the structure plaintiff contemplated building, the local construction officer was not authorized to approve the plan but rather approval had to be obtained from an outside agency appointed by the Department of Community Affairs. Approval of the

foundation plans was not obtained from this agency until August 18, 1982. Concerning the fulfillment of the landscaping condition to final site plan approval, plaintiff alleges that it attempted to meet with the Township landscaping committee several times beginning as early as May 1982 but with little success because of lack of a quorum. Plaintiff also complied with the Planning Board's requirement of a tree survey on this heavily-wooded lot.

Thus, only the second condition remained unfulfilled as of the end of August 1982: the duty of plaintiff to enter into the developer's agreement and to post performance guarantees and escrows to cover the Township's legal and engineering fees. Plaintiff contends that compliance with this final condition was out of its hands as it was the duty of the Township engineer to fix the amount of the performance guarantees and escrow and advise the Township accordingly. Defendants respond that calculation of the performance guarantees and escrow was delayed because the plaintiff failed to submit the final site plan with revisions to the Township for signature. On September 9, 1982 the Township's attorney prepared and submitted a draft of the developer's agreement, but the draft did not include the amount of performance guarantees and escrow. The defendants assert the amounts could not be included because the Township engineer had still not received the final site plan with revisions. Plaintiff contends that the defendant had no right to ask for revisions after final county approval. Nevertheless, based on the unrevised plan, the Township engineer fixed the amount of performance guarantees by letter dated September 28, 1982.

On September 30, 1982 plaintiff tendered payment to the Township's attorney for the soil removal and building permits. In addition plaintiff enclosed a passbook in plaintiff's name for the sum of $88,818.60 to cover the performance guarantees and stated it would execute an assignment of the passbook to the Township in form satisfactory to its attorney. Defendants asserted that tender of the passbook did not conform with the local ordinance regulating posting of performance guarantees which required the tender of 10% of the total guarantee in cash.

Plaintiff says that prior to October 1, 1982 it had began clearing and grubbing the land and contended that both the Township's administrator and engineer had assured plaintiff that once clearing of the land had commenced the project would be deemed started. On October 1, 1982 the Township administrator sent a letter to the plaintiff requesting that the grubbing and clearing of the tract be temporarily halted until October 7, 1982. The letter further stated that these operations be temporarily ceased in order to receive "any last minute comments from the public" at a public meeting scheduled that week, since "the project has been the source of great concern among many residents of the Township." Also on October 1, 1982 plaintiff submitted an application for the necessary permits. The permits were eventually denied in an undated letter, marked received October 27, 1982, from the Township zoning officer.

Finally, on October 8, 1982 Mayor Wenzel, sent a letter to the plaintiff's attorney summarizing the Township's position at that time:

It is my duty as Chief Executive of the Township of Washington to call to your attention pertinent parts of N.J.S.A. 40:55D-52—Effect of final approval of a site plan or major subdivision.

This section of the Land Use Law notes that zoning privileges accorded a developer under preliminary site plan approval shall not be changed for a period of two years after the date of final approval.

The law goes on to read that "if the developer has followed the standards prescribed for final approval .... the Planning Board may extend such period of protection...."

In the case of the "Y", final site plan approval was granted on October 1, 1980, with the two (2) year period starting at that time. Earlier in 1980, on March 1st, the zoning of the parcel upon which the "Y" is to be located was changed, eliminating the use of the property for non-profit purposes (Ordinance 80-1, attached).

As of October 1, 1982, after a month of intensive discussion on the part of my administration, yourself and your representatives, the two year period of zoning protection expired. On that date, the following representative items required for final approval were not completed:

Final approval of the plat itself

Posting of Bonds

Execution of a Builder's Agreement

Issuance of a Building Permit

No satisfactory evidence of compliance with conditions of the Final Site Plan resolution.

The law is clear. An applicant has two (2) years from final approval to comply with these and other conditions of approval. If not, the law provides for the lapse of zoning protection.

I must, therefore, advise you that any work on the site, including clearing and grubbing with the intent to use the property or construct facilities for nonprofit purposes is in violation of the Zoning Ordinance of the Township, specifically Section 74–51, P.R.T.D. Zone, Principal Permitted Uses, as amended. A building permit in furtherance of the contemplated construction will not be issued.

Clearing and grubbing for a permitted use is allowed, however, all other aspects of our land development ordinance must be followed.

To use the property for your original purpose would require an application to the Township Zoning Board of Adjustment.

I regret having to take this action, but the State statute is clear. At this time, based on the factual situation, the applicable law leaves no other option.

Plaintiff alleges that its contractor, who was clearing the land, was threatened with arrest by Township police, and that on October 8, 1982 the Township administrator served plaintiff on the site with a municipal court summons alleging violation of the zoning ordinance.

On October 15, 1982 the monies and passbook that plaintiff had posted for necessary permits and performance guarantees were returned to the plaintiff by the Township clerk. The letter accompanying the return of these items stated that the Township could not retain possession of the items as "the zoning on your property does not permit your proposed structure." In response, plaintiff instituted this action.

Despite the apparent abundance of factual dispute, the judge decided that there was no issue of material fact and heard the case as a summary matter. He did not find it necessary to decide if plaintiff had met all the conditions of the final site plan approval, as he did not view the question particularly relevant to the resolution of the case. Rather, after discussing the meaning of *N.J.S.A.* 40:55D–52 and reciting the defendants' position, he determined that the primary issue was what has to be done after the two-year statutory period of *N.J.S.A.* 40:55D–52 expires to ensure the developer's continued protection from zoning changes.

The judge stated that the question was one of substantial reliance, placing heavy reliance on this court's decision in *Urban Farms v. Franklin Lakes,* 179 *N.J.Super.* 203 (App.Div.), certif. den., 87 *N.J.* 428 (1981). Quoting *Urban Farms,* he stated that application of the substantial reliance doctrine does not depend on the issuance of a building permit, but rather:

> ... requires a weighing of such factors as the nature, extent and degree of public interest to be served by the ordinance amendment on the one hand and, on the other hand, the nature, extent and degree of the developer's reliance on the state of the ordinance under which he has proceeded, the extent to which his undertaking has been at any point approved or encouraged by official municipal action, and the extent to which under the circumstances and as objectively determined, he should have been aware that the municipality would be likely to change the ordinance prior to the actual commencement of the construction. These are the factors constituting the developer's special equities, and if they outweigh the public interest concerns, they should also operate to bar post judgment retroactivity of a zoning ordinance amendment. [*Id.* at 221–222]

■ The judge then proceeded to weigh the equities, finding that plaintiff could have had at least five years of statutory protection if it had so chosen and that the general intent of the Municipal Land Use Law was "to protect substantial investment in major projects" and that the statutory period of protection militated heavily in favor of plaintiff. Weighing these equities, he concluded that plaintiff's final site plan approval had not expired and that plaintiff was entitled to the issuance of the soil-removal and partial building permits requested.

We conclude that the question of whether plaintiff fulfilled the conditions of final site plan approval within the two-year protected period of *N.J.S.A.* 40:55D–52(a) is pivotal to the resolution of this case. This statute unequivocally states that the "zoning requirements applicable to the preliminary approval first granted ... whether conditionally or otherwise, shall not be changed for a period of two years after the date of final approval; ..." *Ibid.* The period of protection may be further extended by the planning board by one-year extensions, not to exceed three extensions. *Ibid.* In this case, no extension was requested. Also, the grant of final approval terminates the

three-year protected time period of preliminary approval provided by *N.J.S.A.* 40:55D–49.

This case is in contrast with *Urban Farms,* 179 *N.J.Super.* at 221, where the municipality amended its ordinance in order to frustrate a judicially-sanctioned special use. *See also Tremarco Corp. v. Garzio,* 32 *N.J.* 448, 456 (1960). *See generally,* Rathkoff, *The Law of Planning and Zoning,* § 50.01 (1982), on the problem of vested interests in land use planning. Indication of the legislative desire for certainty as to the extent of vested zoning rights following final approvals is found in the contemporaneous literature as well as in the plain language of the statute. One article summarizing the major features of the Municipal Land Use Law of 1975 stated: "The rights and obligations in Preliminary and Final Subdivision approval of both the developer and the municipality are now clearly provided for, *including specific time periods within which the vested rights of all parties are protected.*" (Emphasis added), Maslow and Kasler, "The Municipal Land Use Law," New Jersey Municipalities, 6, 24 (March 1976). The predecessor to *N.J.S.A.* 40:55D–52 is *N.J.S.A.* 40:55–1.18, a statute which had produced a "vague" and "uncertain" climate for vested interests after final approval. Maslow and Kasler, *supra,* at 25. Another contemporaneous commentator wrote: "It appears that one bothersome effect of the current uncertainty concerning the term of effect of final approval will be remedied by section 40, *N.J.S.A.* 50:55D–52, in that a term of two years, with up to three one-year extensions are allowed." Sussna, "The New Municipal Land Use Law," 99 *N.J.L.J.* 81, 90 (1976).

What future, unpredictable circumstance might possibly justify a judicial exception to the two-year protection rule, we leave for another day. Here the plaintiff knew that the zoning change followed fast on the heels of its preliminary approval, within less than a month. It had almost two and one-half years thereafter to meet the conditions before zoning protection expired. This case contrasts sharply with *Urban Farms* where the governing body changed the zoning pending an appeal from a

judicial order granting a conditional use which originally had been arbitrarily and capriciously withheld by the municipality. Moreover, *Urban Farms* did not specifically implicate any time-bar under the Municipal Land Use Law. *N.J.S.A.* 40:55D–1 *et seq.*

In view of our legal conclusion, factual findings on whether plaintiff materially and substantially complied with the conditions within time are crucial to this case. If there was not such compliance the judge must decide whether that failure was due to unconscionable conduct or delay on the part of the Township which estops it from withholding the permits. In view of the apparently contradictory contentions surrounding the events leading to rejection of the application, a plenary hearing is necessary.

Reversed and remanded; jurisdiction is not retained.