**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3316-21

29 E 29 STREET
HOLDINGS, LLC and
BAYONNE/OMNI
DEVELOPMENT, LLC,

      Plaintiff-Respondents/
      Cross-Appellants,

v.

CITY OF BAYONNE,

      Defendant-Appellant/
      Cross-Respondent.

_____

      Submitted October 30, 2023 – Decided February 26, 2024

      Before Judges Mawla and Marczyk.

      On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-1682-20.

      Inglesino Webster Wyciskala & Taylor, LLC, attorneys for appellant/cross-respondent (Elnardo Julian Webster, II, Nicholas Albert Grieco, and Alyssa E. Spector, of counsel and on the briefs).

DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys for respondent/cross-appellant 29 E 29 Street Holdings LLC; Genova Burns LLC, attorneys for respondent/cross-appellant Bayonne/Omni Development, LLC (Thomas A. Abbate, Gregory J. Hazley, Angelo J. Genova, James M. Burns, and Lawrence Bluestone, of counsel and on the joint briefs).

PER CURIAM

Defendant City of Bayonne appeals from the trial court's May 20, 2022 order declaring a zoning ordinance—affecting property owned by plaintiffs 29 E 29 Street Holdings LLC ("29 E 29") and Bayonne/Omni Development, LLC ("Omni")—null and void under the uniformity requirement of N.J.S.A. 40:55D-62(a). Plaintiffs cross-appeal from the court's April 22, 2021 oral decision limiting discovery. We reverse and remand for further proceedings consistent with this opinion regarding the appeal and affirm as to the cross-appeal.

I.

The City Council of Bayonne introduced an ordinance to amend and supplement the zoning regulations for Bayonne in February 2020. Bayonne's notice regarding the ordinance states its purpose was "to adopt zoning that services the present hospital use for Bayonne Hospital and maintains and supports future growth and development of medical facilities by creating a hospital district." The Bayonne Medical Center has served the community since

2

1888 and has expanded its facilities and services through the years. Bayonne asserts it sought to secure the present hospital use for the public's health, safety, and well-being.

The ordinance, O-20-20, declared: Bayonne Hospital had grown in facilities and services in the last century and was now "a critical part of the Bayonne community"; the city had reexamined its Master Plan in 2018 and found one of the goals was to "support Bayonne Hospital as the [c]ity's principal provider of health care services"; "the . . . Council desires to adopt zoning that secures the present hospital use for the public's health[,] safety[,] and well[-]being"; the growth of redevelopment with increased housing and commercial properties, and the geography of the city and the proximity to other dense populations requires maintenance of "a fully functional hospital within the [c]ity's limits"; and a dedicated hospital district zone would "[e]nsure access to its residents to medical facilities."

The ordinance created a new zone designated as the "H-1 Hospital District" ("Hospital District"). The Hospital District was comprised of five properties: Block 164, Lot 5.01; Block 420.02, Lot 2.01; Block 159, Lots 14 and 15; and Block 164, Lot 4.01. 29 E 29 owns Block 164, Lot 5.01; Block 420.02, Lot 2.01; Block 159, Lots 14 and 15. 29 E 29 purchased its property

from the original plaintiff in the matter, WTFK Bayonne Propco LLC ("Propco properties").[1] Omni owns Block 164, Lot 4.01 ("Omni property").[2] The hospital is located on the Propco property, Block 164, Lot 5.01. The Omni property is a vacant lot adjacent to the hospital. Bayonne Medical Center is operated by CarePoint Health.

The ordinance stated the purpose of the zone was to "permit, expand[,] and continue the use of an inherently beneficial, hospital use serving the residents of the [c]ity of Bayonne and . . . to continue to function as an engine of economic development." It listed permitted principal uses as: "[h]ospital and medical centers providing primary health care services for the diagnosis, care[,] and treatment of human patients," medical and dental laboratories, research facilities, training facilities for hospital personnel, "[r]esearch and development laboratories related to medical use," "[g]overnment and municipal use," and

---

[1] In October 2020, the court entered a consent order for substitution of parties, allowing 29 E 29 to replace the preceding plaintiff, WTFK Bayonne Propco LLC.

[2] The Omni property and the Propco properties will hereinafter be collectively referred to as "the properties." These properties are the only properties in the Hospital District.

relevant parking garages.[3]  Bayonne maintains the ordinance creates a cohesive zoning scheme that encourages the present hospital use and the expansion of the facilities and services.

The Hospital District prohibited nursing homes, hospice care, facilities for long-term care, chronic care, staff residences, and assisted living and memory care.  These prohibited uses are central to the dispute between the parties as plaintiffs assert Bayonne improperly excluded nursing homes from the Hospital District.

Prior to the adoption of O-20-20, the Hospital District was comprised of three different zoning districts.  Block 420.02, Lot 2.01; Block 159, Lots 14 and 15; and part of Block 164, Lot 5.01—all Propco properties—were located in the

---

[3]  The Hospital District's accessory uses included "medical and dental offices," parking, and emergency vehicle and mobile hospital vehicle parking.  Its permitted accessory uses included "uses customarily and/or associated with the operation and administration of the principal use," "gift or flower shops, cafeteria, restaurant or snack bars and/or pharmacy provided said use or uses are associated with a hospital or medical center and maintains no exterior entrances or [exits] to the outside of the building," "child care facilities serving hospital personnel and patients," and "helipad provided approval from [the Federal Aviation Administration] and other federal/state aviation organization approval is granted."

Transit Development District ("TDD").[4] The other part of Block 164, Lot 5.01—belonging to Propco—was located in the Detached-Attached Residential District ("R-2").[5] The Omni property—Block 164, Lot 4.01—was located in the Central Business District ("CBD").[6] The Bayonne Medical Center was in a split lot zone.

Bayonne introduced O-20-20 on February 19, 2020. It published notice of this first reading on March 2, 2020. The notice provided there would be a public hearing for further consideration on March 18, 2020. The City Council referred the proposed zoning amendments to the Bayonne Planning Board. On

---

[4] The TDD permitted detached and attached single family dwellings, detached two-family dwellings, multi-family dwelling townhouses, multi-family dwelling garden apartments or apartment houses, professional and business offices, certain retail commercial uses, personal service establishments with certain exceptions, home professional offices, banks and deposit institutions, mixed use residential developments, government offices, and essential services. Three of the Propco properties were zoned in the TDD.

[5] The R-2 district permitted detached single-family and two-family dwellings, home occupations, family day care homes, and essential services. A portion of one of the Propco properties was zoned in R-2.

[6] The CBD permitted the following uses: professional and business offices, commercial retail, banks and deposit institutions, restaurants, movie theaters, cultural centers, dance instruction studios, fast food, certain dwelling apartment uses, essential services, government offices, and fitness centers. This was the zoning for the Omni property before O-20-20.

A-3316-21

March 10, 2020, the Planning Board reviewed the ordinance and considered a memorandum and presentation from a professional planner from CME Associates. He explained "the existing hospital . . . and its other associated facilities are situated in three different zones, the CBD, . . . the R-2 . . . [,] [and] the TDD . . . . What this ordinance is seeking to do is to consolidate the zoning of these parcels to one zone, . . . H-1." He added the permitted uses in H-1 would essentially be hospital use and anything accessory to the hospital, and it would "prohibit residential, commercial uses not associated with the hospital." The CME planner noted the reason provided for the restriction being proposed was to support the hospital and "maintain[] the hospital as a viable medical facility for the area. It is an important economic engine for the [c]ity, as well as the region, and with the estimates and increases in population, including the senior population, it is important to have the support for all the new residents." He opined that the ordinance was consistent with Bayonne's 2000 Master Plan and 2017 Master Plan Reexamination.[7]

---

[7] The Master Plan Reexamination Report stated,"[h]ospital issues include the need to be supported and encouraged to expand in appropriate locations in order to continue to function as an engine of economic development." It also listed "[s]upport[ing] Bayonne Hospital as the [c]ity's principal provider of health care services."

The planner fielded questions from a Commissioner who asked, "if I wanted [to] open up a long-term care facility there, that's prohibited?" The planner replied that was correct. The planner was then asked, "[i]f I wanted to be operating a hospital and I want a long-term care facility as part of that operation, I would have to come back to . . . the Zoning Board at that point?" The planner responded: "Yes." The planner added the only uses permitted in H-1 without going to the Zoning Board would be "[h]ospital, medical uses[,] and dental uses associated with the hospital." The Planning Board approved the zone and sent it back to the City Council. On March 18, 2020, the City Council unanimously approved Ordinance No. O-20-20.

Bayonne's recitation of the purposes behind the ordinance is disputed by plaintiffs. The passage of the Hospital District ordinance was against the backdrop of an apparent ongoing dispute involving CarePoint's operation of the Bayonne Medical Center, Christ Hospital in Jersey City, and Hoboken University Medical Center. In 2019, CarePoint encountered financial difficulties. According to plaintiffs, Omni is "affiliated with Avery Eisenreich, the owner of Alaris Health, which operates nursing homes." Municipal officials from Bayonne, Jersey City, and Hoboken were concerned "Eisenreich, who owned some or all of the real property on which the three hospitals" were

situated, would convert them into nursing homes. Plaintiffs maintain Bayonne sought to block Eisenreich's plan as part of a "broader strategy" by adopting the ordinance and establishing a Hospital District.[8]

Plaintiffs assert neither the Master Plan nor the Reexamination Report indicated rezoning was necessary to support Bayonne Medical Center, and the enactment of the ordinance was a strategy to "insert [itself] into the operational affairs" of the hospital.[9] Plaintiffs note Bayonne's Mayor publicly announced he would fight any proposed closure of the hospital. Moreover, in April 2020, the Hudson County Commissioners and Hudson County Improvement Authority ("HCIA") authorized the acquisition of the hospital property through eminent domain.[10] Plaintiffs contend these efforts demonstrated Bayonne's efforts to "insert itself into a business dispute between CarePoint and the underlying property owner, and to thereby tip the balance in favor of a politically[ ]favored

---

[8] Plaintiffs note Hoboken and Jersey City adopted similar ordinances to protect their hospitals as well.

[9] Plaintiffs contend Eisenreich never planned to close any of the hospitals. Moreover, he could not have done so without a "detailed regulatory review and approval process by the [Department of Health ('DOH']" pursuant to N.J.A.C. 8:33-3.2(b).

[10] Plaintiffs note the eminent domain process "appears to be stalled for the moment . . . ."

A-3316-21

successor operator rather than . . . 29 E 29, which in turn has expressed . . . [an] intention[] to revitalize and continue Bayonne Medical Center as an acute care hospital."

Plaintiffs filed a verified complaint in lieu of prerogative writs against Bayonne in May 2020.[11] The complaint asserted the "passage of [O-20-20] appears to have been directed specifically at impairing [p]laintiffs' property rights by inappropriately limiting the permitted uses of the [p]roperty" and that there were procedural and substantive flaws warranting it to be declared void. Plaintiffs argued Bayonne "adopted the [o]rdinance based on animus towards plaintiff[s]." Furthermore, plaintiffs raised the argument that the distinction between hospitals and nursing homes was "an unreasonable distinction."

Bayonne filed its answer in August 2020. The court entered a case management order in November 2020, establishing the permitted amount of

---

[11] The complaint advanced eight counts: violation of statutory publication requirements, N.J.S.A. 40:49-2 to -2.1; violation of the Municipal Land Use Law ("MLUL") notice requirements, N.J.S.A. 40:55D-62 to -68.6; preemption by the New Jersey Health Care Facilities Planning Act ("NJHCFPA"), N.J.S.A. 26:2H-1 to -26; lack of uniformity, N.J.S.A. 40:55D-62(a); violation of the federal equal protection clause, U.S. Const. amend. XIV; violation of equal protection under the New Jersey Constitution, N.J. Const., art. I, ¶ 1; inverse spot zoning; and pretextual downzoning. The complaint sought a judgment declaring the ordinance null and void and enjoining Bayonne from enforcing the ordinance.

document requests and interrogatories. It set a discovery end date of April 6, 2021. In February 2021, the court entered a second case management order instructing the parties to submit briefs on the need for depositions and to address deficiencies in the responses to written discovery. Plaintiffs sought to depose various municipal, county, and state elected officials and the CME planner. In addition, plaintiffs requested defendant produce an extensive list of documents, emails, and text messages, as well as statements by persons with knowledge of the matter. Bayonne answered or objected to plaintiffs' interrogatories regarding relevant persons; expert witnesses; social media; personal email accounts and phone numbers of relevant parties; written communications; and factual bases for the ordinance. Bayonne stated it relied on factual bases found in municipal proceedings, the Planning Board hearing, the master plan, CME's planner's presentation, the CME Associates memorandum, and the Planning Board's resolution in determining whether O-20-20 would "permit, expand[,] and continue" the existing hospital use and whether long-term care facilities would be prohibited uses in H-1.

On April 22, 2021, the court denied plaintiffs' request for additional discovery. It cited Rule 4:69-4 to state that "actions in lieu of prerogative writs [are] generally limited to the record below, and that the courts have extensive

11

authority to limit discovery . . . ." In citing to <u>Hirth v. City of Hoboken</u>, 337 N.J. Super. 149 (App. Div. 2001), and other cases proffered by plaintiffs, the court found

> there is no need for additional discovery, that this matter can proceed as to the legal issues in this case, which is whether or not the [c]ourt should declare the ordinance null and void, and that should be based on the record below, as allowed from limited paper discovery, but there is no need to further cloud the issues.

The court explained the counts in the complaint were all based on legal arguments. It also noted any claims regarding economic losses are "for . . . another court, another day." The court found no need for further discovery.

In June 2021, the court entered a case management consent order setting the briefing schedule and trial date. On September 9, 2021, the court heard oral argument, but not testimony, and reserved its decision. On May 20, 2022, the court issued a written decision accompanied by an order declaring the subject ordinance null and void.

While plaintiffs sought to invalidate the ordinance on five grounds, the court focused on the issue of uniformity under N.J.S.A. 40:55D-62(a).[12] In

---

[12] The court noted plaintiffs bore the burden of overcoming the presumption of validity afforded to zoning requirements, as stated in <u>Riggs v. Long Beach Twp.</u>, 109 N.J. 601, 612 (1988).

doing so, it focused on <u>Urban Farms, Inc. v. Franklin Lakes</u>, 179 N.J. Super. 203 (App. Div. 1981). The court noted <u>Urban Farms</u> involved "a case where our Appellate Division explicitly addresse[d] the issue of zoning ordinances which distinguish between nursing homes and hospitals, and the impermissibility of doing so in the absence of compelling public policy grounds." The court further found Bayonne did not meet its burden because it did not "adequately set forth arguments supporting a finding of compelling public policy reasoning."

The court found Bayonne's assertion the protection of "'the region's access to an acute care facility' and . . . 'the [h]ospital, [supporting] its use, and encourag[ing] its expansion,'" was not persuasive because Bayonne did not show how these "legitimate" reasons were "elevated to 'compelling' reasons." The court stated "[d]efendants have not shown this [c]ourt what 'legitimate public policy would justify the exclusion of [nursing homes] and inclusion of [hospitals] within the same zone.'" (third and fourth alterations in original) (quoting <u>Urban Farms</u>, 179 N.J. Super at 215). Because of this, the court determined that even if it applied the heightened "arbitrary, capricious or unreasonable" standard used in <u>Riggs</u>, 109 N.J. at 611, "the [o]rdinance violates the uniformity requirement of the MLUL." The court did not analyze the merits of plaintiffs' remaining arguments.

13

## II.

## A.

Bayonne argues the trial court applied the wrong standard in analyzing the validity of the ordinance by failing to address the reasonableness of the zoning requirement and the relationship it bears with the regulation of land use. It further contends the ordinance was permitted under the MLUL because reasonable classifications within a district are permitted, as uniformity is not absolute. See Quinton v. Edison Park Dev. Corp., 59 N.J. 571, 580 (1971), and Rumson Ests., Inc. v. Mayor and Council of Borough of Fair Haven, 177 N.J. 338, 359 (2003). Bayonne asserts the uniformity requirement does not prohibit classifications within a zone provided they are reasonable, and the trial court was obligated to evaluate whether the "classification between hospital use and non-hospital uses was reasonably based [on] the public policy to be served" and the purpose of the distinction here was to "maintain" Bayonne Medical Center as a viable acute care facility for the city for the public's health, safety, and welfare.

Bayonne further argues because plaintiffs have the "heavy burden" of affirmatively establishing that the municipality acted arbitrarily, capriciously, or unreasonably in treating similarly situated property disparately, O-20-20 was

entitled to a presumption of validity.  See J.D. Const. Corp. v. Bd. of Adjustment of Freehold Twp., 119 N.J. Super. 140, 146 (App. Div. 1972).  Bayonne argues "the trial court erroneously found that the uniformity requirement of the MLUL requires hospitals and nursing homes always be treated similarly unless the municipality demonstrates a compelling public policy for the distinction" and "the trial court [improperly] found that any ordinance which distinguishes hospitals from nursing homes is on its face unreasonable and an analysis regarding the reasonableness of the ordinance is unnecessary."

Further, Bayonne contends the court misconstrued the holding of Urban Farms, 179 N.J. Super. at 203, because the facts here are different.  It notes "the [o]rdinance does not prohibit nursing homes [c]ity-wide as nursing homes are permitted uses in other districts in the [c]ity," and the ordinance's reason for the distinction was to ensure the continued operation of Bayonne Medical Center, which "is an existing use with a certificate of need issued by the State Department of Health."  In short, the ordinance's purpose was to protect an existing hospital and its accessory uses.  Relying on Lakewood Residents Association v. Congregation Zichron Schneur, 239 N.J. Super. 89, 98 (Law. Div. 1989), Bayonne asserts the real differences between the uses of long-term care facilities and hospitals justify O-20-20's distinction to further its purpose.

Lastly, Bayonne asserts the court erred in concluding it must demonstrate a compelling public policy ground to justify the ordinance.  Moreover, even if that was the proper standard, Bayonne demonstrated a compelling public interest in creating the Hospital District to protect the region's access to essential medical services.

Plaintiffs counter that uniformity is a constitutional matter, and Bayonne is required to satisfy due process and equal protection requirements in distinguishing between two similarly situated uses.  They note N.J.S.A. 40:55D-62(a) requires that regulations in zoning ordinances must "be uniform throughout each district for each class . . . of buildings . . . ."  Plaintiffs contend the trial court applied the correct standard in finding the distinction was not permissible.[13]  They argue Lakewood, 239 N.J. Super. at 89, is distinct because it allowed the similarly situated uses—houses of worship—to be treated

---

[13] Plaintiffs also assert Bayonne should be barred from asserting the trial court applied the wrong legal standard and that the court should have placed the burden on plaintiffs to demonstrate Bayonne's distinction between hospitals and nursing homes was arbitrary and capricious because it did not raise this argument before.  However, we observe the court recognized under Riggs, 109 N.J. at 612, ordinarily the party challenging the ordinance bears the burden of overcoming the presumed validity.  The court also found defendants had the burden to demonstrate a compelling public policy ground for the ordinance under Urban Farms, 179 N.J. Super. at 216.  Moreover, our decision does not rest on the trial court applying the wrong standard.  Accordingly, we have considered Bayonne's arguments in this regard.

A-3316-21

differently in different zones, whereas the hospital use and long-term care uses under O-20-20 were treated differently in the same zone. Instead, according to plaintiffs, Urban Farms is controlling, Bayonne had the burden to demonstrate a compelling public policy ground to establish the Hospital District, and the court correctly determined Bayonne did not justify its distinction between hospitals and nursing homes.

Plaintiffs further argue the reason Bayonne offered for the distinction between hospitals and nursing homes was not compelling. While there is a presumption of validity, it "is rebutted when the legislative body had no facts before it that would rationally support a conclusion that the zoning ordinance advances a legitimate public interest." Plaintiffs assert the record provided by Bayonne does not show how distinguishing nursing homes from hospitals is justified based on the evidence, nor does it show a clear purpose of public policy. Plaintiffs rely on Roselle v. Wright, 21 N.J. 400 (1956), for the proposition that without some public policy justification, Bayonne's preference cannot justify the lack of uniform treatment of like uses. Plaintiffs submit "secur[ing] the present hospital use for the public's health, safety, and well[-]being," and unifying zoning districts into a special district for the hospital does not serve as a compelling rationale for the distinction because it is merely a preference, and

there is nothing to show that the distinction would support the stated objectives.[14]

## B.

The "power to zone is fundamentally an exercise of the State's police power." Griepenburg v. Twp. of Ocean, 220 N.J. 239, 252 (2015). "The 1947 New Jersey Constitution vested that power in the Legislature and authorized the Legislature to delegate the zoning power to municipalities" through its enactment of the MLUL, N.J.S.A. 40:55D-1 to -163. Ibid.

Under the MLUL, municipalities have the authority both to enact and amend zoning ordinances. See N.J.S.A. 40:55D-62(a); see also Riya Finnegan LLC v. Twp. Council of S. Brunswick, 197 N.J. 184, 191 (2007). A municipality may amend an ordinance "as it may deem necessary and proper for the good government, order and protection of persons and property[,] and for the preservation of the public health, safety and welfare of the municipality and its

---

[14] Plaintiffs alternatively argue we should affirm because the ordinance is preempted by NJHCFPA. N.J.S.A. 26:2H-1 to -26. We decline to reach plaintiffs' argument since this issue was not previously addressed by the trial court judge. See Ins. Co. of N. Am. v. Gov't Emps. Ins. Co., 162 N.J. Super. 528, 537 (App. Div. 1978) (declining to resolve on appeal an issue not addressed by the trial court). Plaintiffs are not precluded from raising this issue on remand.

inhabitants." State v. Clarksburg Inn, 375 N.J. Super. 624, 633 (App. Div. 2005) (citing N.J.S.A. 40:48-2).

Our role in reviewing zoning ordinances is limited. Zilinksy v. Zoning Bd. of Adjustment of Verona, 105 N.J. 363, 367 (1987). We do not judge the wisdom of a zoning change. Kaufmann v. Planning Bd. for Warren, 110 N.J. 551, 558 (1988). Land-use decisions "are entrusted to the sound discretion of the municipal boards," ibid., because local officials "are best suited to make judgments concerning local zoning regulations" due to their familiarity with their communities, Pullen v. Twp. of S. Plainfield Planning Bd., 291 N.J. Super 1, 6 (App. Div. 1996).

When appellate courts review "the decision of a trial court that has reviewed municipal action, we are bound by the same standard as was the trial court." Grubbs v. Slothower, 389 N.J. Super. 377, 382 (App. Div. 2007) (quoting Fallone Props., LLC v. Bethlehem Twp. Plan. Bd., 369 N.J. Super. 552, 561 (App. Div. 2004)). "[M]unicipal ordinance[s are] afforded a presumption of validity, and the action of a board will not be overturned unless it is found to be arbitrary and capricious or unreasonable, with the burden of proof placed on the plaintiff challenging the action." Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015) (citing Price v. Himeji, LLC, 214 N.J. 263, 284 (2013)).

Accordingly, we presume a governing municipal body's actions are valid. See Griepenburg, 220 N.J. at 253 (noting the "well-established" principle that a presumption of validity insulates a zoning ordinance from attack); Clarksburg Inn, 375 N.J. Super. at 632 (holding courts review a municipal ordinance with a "presumption of validity and reasonableness"). We defer to a local board's actions and factual findings as long as they are supported by substantial evidence in the record and are not arbitrary, unreasonable, or capricious. Jacoby v. Zoning Bd. of Adjustment of Borough of Englewood Cliffs, 442 N.J. Super. 450, 462 (App. Div. 2015); see also Jock v. Zoning Bd. of Adjustment of Wall, 184 N.J. 562, 597 (2005) ("[P]ublic bodies, because of their peculiar knowledge of local conditions, must be allowed wide latitude in their delegated discretion."); Rowatti v. Gonchar, 101 N.J. 46, 52 (1985) (holding a board's factual determinations are entitled to "great weight" and should not be disturbed "unless there is insufficient evidence to support them"). However, a local board's "legal determinations are not entitled to a presumption of validity and are subject to de novo review." Wilson v. Brick Twp. Zoning Bd. of Adjustment, 405 N.J. Super. 189, 197 (App. Div. 2009).

The party challenging an ordinance must overcome its presumption of validity. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366,

380 (1995) (quoting <u>Bow & Arrow Manor, Inc. v. Town of W. Orange</u>, 63 N.J. 335, 343 (1973)); <u>see also</u> <u>Toll Bros., Inc. v. Bd. of Chosen Freeholders of Burlington</u>, 194 N.J. 223, 256 (2008). The challenging party must demonstrate an ordinance's invalidity clearly and convincingly. <u>Cona v. Twp. of Washington</u>, 456 N.J. Super. 197, 215 (App. Div. 2018). If an ordinance is "debatable, it should be upheld." <u>Riggs</u>, 109 N.J. at 611.

One limit on the power to zone is the MLUL's uniformity requirement:

> The zoning ordinance shall be drawn with reasonable consideration to the character of each district and its peculiar suitability for particular uses and to encourage the most appropriate use of land. The regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of buildings or other structure or uses of land, including planned unit development, planned unit residential development and cluster development, but the regulations in one district may differ from those in other districts.
>
> [N.J.S.A. 40:55D-62(a).]

Uniformity is grounded in "the constitutional guarantees of due process and equal protection that guard against the arbitrary and unreasonable exercise of [state] power." <u>Rumson</u>, 177 N.J. at 357 (citing <u>Roselle</u>, 21 N.J. at 409-10). Equal protection "forbids arbitrary discrimination between persons similarly circumstanced." <u>Lakewood</u>, 239 N.J. Super. at 98. Constitutional uniformity

21

requires classifications "be founded in real and not feigned differences having to do with the purpose for which the classes are formed." Rumson, 177 N.J. at 359 (quoting Roselle, 21 N.J. at 410).

We focus our discussion on Urban Farms, which the trial court relied upon in declaring the Hospital District zoning ordinance null and void. In Urban Farms, we addressed the issue of whether a developer could be deprived of a decisive judicial declaration of its rights by a subsequent zoning ordinance barring the proposed use. 179 N.J. Super. at 207. Urban Farms owned a parcel of land in Franklin Lakes where it sought to build a nursing home. Id. at 208. Urban Farms' application was rejected, but it was successful in a subsequent action in lieu of prerogative writs and obtained a judgment directing that it be issued a building permit. Id. at 207. Franklin Lakes appealed from that judgment. Ibid. While the appeal was pending, Franklin Lakes amended its zoning ordinance to eliminate nursing homes as a permitted or conditional use in the municipality. Ibid. That action was sustained in the Law Division, and Urban Farms appealed from that judgment. Id. at 215.

Although the primary issue we addressed in Urban Farms—a municipality changing a zoning ordinance to address an adverse court ruling—is not relevant to the issues in the matter before us, our discussion regarding the municipality's

ability to limit nursing homes while allowing hospital uses is germane to the issues before us. In Urban Farms, we noted that prior to 1979, the zoning ordinance "provided for five categories of permissible conditional uses in the residential districts of the borough, including churches and church-related uses, hospitals and nursing homes, public and private elementary and secondary schools, golf courses, and nonprofit recreational facilities." Id. at 208. In addressing the efficacy of Franklin Lakes' attempt to zone out nursing homes during the pendency of an appeal in response to a ruling in favor of Urban Farms, we noted, "[t]he technique employed by the borough . . . to achieve legislatively what it was unable to achieve by judicial action . . . [was] invalid . . . ." Id. at 214-15.

More fundamentally, we concluded the ordinance amendment was "invalid because of the unreasonable distinction it draws between hospitals, a continued permitted conditional use, and nursing homes, now a prohibited use." Id. at 215. We noted New Jersey's land use law mandates "[t]he regulations in the zoning ordinance shall be uniform throughout each district for each class or kind of buildings or other structures . . . ." Ibid. (alteration in original) (quoting N.J.S.A. 40:55D-62(a)). We stated, "[n]ursing homes and hospitals are uses which in our view are so similar both physically and functionally that their

23

disparate classification for zoning purposes could be justified only on compelling public policy grounds." Id. at 216 (emphasis added). We noted, "[t]he State and Federal Governments having . . . integrated nursing homes and hospitals within a single system for purposes of control and regulation and subjecting both to the same certificate of need prerequisites, we [were] satisfied that they cannot be disparately treated for zoning purposes . . . ." Ibid.[15]

Despite our holding under the particular facts in Urban Farms, we also recognized there were practical differences between hospitals and nursing homes, which are relevant here for the purposes of the Bayonne Hospital District. Id. at 217. Specifically, "[w]e recognize[d hospitals and nursing homes] are not identical and that it is arguable that hospitals, because they provide emergency services and serve a broader spectrum of the community, may be of greater benefit to the public welfare than are nursing homes." Ibid.

---

[15] We observed that there had been a recent "virtual revolution in health care facility control and regulation effected by . . . federal and state legislation and implementing administrative rules." Ibid. The legislation provided that "residential health care facilities of whatever nature constitute an integrated, comprehensive system of health care delivery service subject to unified and integrated state policy, planning and control.'" Ibid. See N.J.S.A. 26:2H-1 (stating "[T]he [DOH] shall have the central responsibility for the development and administration of the State's policy with respect to health planning, hospital and related health care services . . . .").

We went on to determine "that the very factors which may suggest a potentially greater public need for hospitals also make them functionally more intrusive upon residential neighborhoods." Ibid. (emphasis added).

In this matter, Bayonne was not suggesting that hospitals are less intrusive and more compatible with a particular area than nursing homes unlike the municipality in Urban Farms. See ibid. Rather, Bayonne made a public policy determination regarding the importance of maintaining and securing a hospital use for the particular zone, given its importance to the community. In that regard, Urban Farms is factually distinct from this case. Moreover, as we suggested in Urban Farms, hospitals are, under certain circumstances, a greater benefit to the public and serve a potentially greater public need than nursing homes. See ibid.

We conclude this is a circumstance in which a municipality has established a compelling public policy ground based on the vital need to preserve a hospital use for the subject property for the public's health and welfare. More particularly, we agree with Bayonne that given Bayonne Medical Center is the "only general acute care hospital and is the [c]ity's principal provider of health care services," coupled with "the geographic nature of the [c]ity, which is a peninsula, and its proximity to other population densities," it has established a

compelling public policy reason "to maintain a fully functional hospital within the [c]ity limits [to] support the stability, future growth[,] and development of the hospital at its present location."

Bayonne's determinations justify the disparate classification under the facts in this case. Accordingly, we part company with the trial court where it indicated, without any detailed analysis, that Bayonne had not provided the court with any arguments demonstrating that establishing a Hospital District, which excludes nursing homes, furthers a compelling public policy. Again, because of the fundamental differences between hospitals and nursing homes that may require the entities be treated differently in certain circumstances, unlike Urban Farms, the formation of the Hospital District was not an "invidious and unjustifiable distinction." Ibid. Accordingly, even if the ordinance did not satisfy the uniformity requirements under N.J.S.A. 40:55D-62(a), we conclude Bayonne satisfied a compelling public policy justification under Urban Farms, 179 N.J. at 217.

### C.

Plaintiffs argue on cross-appeal that if we reverse the trial court's order declaring the ordinance null and void, the court's decision limiting discovery should be reversed. Plaintiffs assert their claims for inverse spot zoning and

pretextual downzoning justify the discovery request. The theory of those claims was that the ordinance was designed "to target Eisenreich and interpose the will of elected officials upon a private business dispute . . . ." Plaintiffs contend this was an improper purpose. They maintain "there is no 'record below'" for the ordinance and there are disputed factual issues, so the case should have proceeded in the same manner as ordinary civil litigation, with discovery afforded to the parties.

Plaintiffs argue Bayonne refused to answer certain questions during written discovery that would have spoken "to the actual purpose" behind the ordinance. This left outstanding factual issues surrounding communications, statements, social media posts, and written correspondence. This led to plaintiffs seeking to depose a litany of city, county, and state officials including: Bayonne's Mayor regarding his knowledge of the ordinance and eminent domain plans; a member of the City Council regarding "the passage of [O-20-20], the purposes behind it and the information considered by the Council members in voting in favor of the Ordinance"; the planner regarding his interactions with the Council and any other officials; along with other county and state officials.

Bayonne counters the court correctly denied further discovery because it had permitted written discovery and the parties responded to the requests. The

trial judge then determined the record produced was sufficient for the trial court to render a decision without depositions or additional discovery. Bayonne cites the "expansive authority" of trial courts to limit discovery. Additionally, it asserts plaintiffs are seeking "unfettered and wholly irrelevant discovery" and the current record consists of the City Council meeting minutes from February 2020, the March 10, 2020 planning board meeting transcript, the resolution recommending adoption of the ordinance, the memorandum regarding the Hospital District from CME Associates, and the March 18, 2020 City Council meeting minutes. There were also "over 400 pages of emails and attachments relating to the Ordinance . . . produced by the [c]ity." Furthermore, Bayonne contends plaintiffs are only "maki[ng] general assertions" that any additional depositions were necessary, and they do not demonstrate what additional discovery or depositions would be helpful relating to the inverse spot zoning or pretextual downzoning claims.

Reviewing courts "generally defer to a trial court's disposition of discovery matters unless the court has abused its discretion or its determination is based on a mistaken understanding of the applicable law." State v. Brown, 236 N.J. 497, 521 (2019) (quoting Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)); Davis v. Disability Rts. N.J., 475 N.J. Super. 122,

28

140-41 (App. Div. 2023). This abuse of discretion standard "instructs [appellate courts] to 'generously sustain [the trial court's] decision, provided it is supported by credible evidence in the record.'" Brown, 236 N.J. at 522 (second alteration in original) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 384 (2010)). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan, 140 N.J. at 378).

For actions in lieu of prerogative writs, "[t]he scope and time to complete discovery, if any, will be determined at [a] case management conference . . . ." R. 4:69-4. Generally, "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party . . . ." R. 4:10-2(a). "'Relevant evidence,' although not defined in the discovery rules, is defined elsewhere as 'evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action.'" Payton v. N.J. Tpk. Auth., 148 N.J. 524, 535 (1997) (quoting N.J.R.E. 401).

"Although pretrial discovery should be liberally granted, its range is not limitless. Meandering expeditions which seek irrelevant, duplicative, oppressive[,] or burdensome discovery are not permitted." HD Supply Waterworks Grp., Inc. v. Dir., Div. of Tax., 29 N.J. Tax. 573, 583 (2017). Moreover, "[t]he discovery rights provided by our court rules are not instruments with which to annoy, harass or burden a litigant or a litigant's experts." Ibid. (quoting Gensollen v. Pareja, 416 N.J. Super. 585, 591 (App. Div. 2010)).

When discovery is sought on issues regarding legislation, a court "will not inquire into legislative motive to impugn a facially valid ordinance, but [it] will consider evidence about the legislative purpose 'when the reasonableness of the enactment is not apparent on its face.'" Riggs, 109 N.J. at 613 (quoting Clary v. Borough of Eatontown, 41 N.J. Super. 47, 71 (App. Div. 1956)). "Motive" is "the subjective considerations that move a legislator," while "purpose" consists of the goals to be achieved by the ordinance. Ibid. When an improper purpose is asserted, the court may examine the municipality's true purpose, but it should be limited to an evaluation of the objective facts surrounding the adoption of the ordinance. Ibid. It is "anticipate[d] that testimony about the mental processes

of municipal officials ordinarily will be immaterial to establishing the validity of a zoning purpose." Id. at 615.

Hirth, relied on by the trial court, involved a challenge to a Hoboken ordinance adopting a redevelopment plan. 337 N.J. Super. at 154. The Hirth court stated "the only hearing required before adoption of a . . . municipal ordinance[] is a legislative hearing before the governing body." Id. at 165 (citing N.J.S.A. 40:49-2(b)). This means there usually "is no administrative record other than whatever report the planning board may have submitted to the governing body." Ibid. Moreover, "[t]here is no requirement that evidence be presented providing a factual foundation for the ordinance, and the governing body does not ordinarily make any findings of fact to justify its action." Id. at 165-66. Therefore, actions in lieu of prerogative writs challenging the validity of an ordinance are subject to different procedures than challenges to quasi-judicial actions. Id. at 165. "[I]f an action is brought challenging the validity of an ordinance, and resolution of the challenge turns on disputed factual issues, the case must proceed in the same manner as other civil litigation, with an opportunity for discovery, pretrial motions[,] and a trial." Id. at 166.

Because (1) "Hoboken failed to show the absence of any material issue of fact concerning the validity of the part of the redevelopment plan which rezones

31

the property plaintiff has contracted to purchase," (2) its motion papers contained incomplete transcripts and no documentary evidence or affidavits of someone involved in the process explaining why the plaintiff's property was placed in a nonresidential district, and (3) it simply relied on the presumption of validity while the plaintiff produced an expert to testify to the "illogical land use patterns" of the redevelopment plan, the record below was insufficient to make a determination on the factual claims. Id. at 166-68. We therefore remanded the case. Id. at 168.

Here, the court did not abuse its discretion in determining there was no need for additional discovery. It was within the court's discretion to determine it was not necessary to conduct depositions because there was sufficient evidence in the record to make the legal determination on the validity of O-20-20. R. 4:10-2(g). Unlike in Hirth, there was a sufficient record before the trial court here. Specifically, the record included the CME Associates report, ordinance O-20-20 in its entirety (including the preamble which provided the background and rationale for the ordinance), the transcript of the relevant portions of the Planning Board hearing where the CME planner testified, the Planning Board's resolutions, and relevant minutes from the meeting adopting the ordinance and the first reading meeting. The trial court determined the legal

question of O-20-20's validity could be determined on that record, and it could discern the objective purpose of the ordinance without the parties needing to depose any of the officials involved. Here, the record was not so lacking or incomplete as was the situation in <u>Hirth</u>. Thus, the court here did not misapply its discretion by denying plaintiffs' requests to conduct depositions.

Accordingly, we affirm the trial court's decision to limit discovery. However, it is not clear from the court's decision whether it denied discovery in the context of plaintiffs' spot zoning and pretextual downzoning claims, which have not yet been addressed by the court. It may be the court believed the case could be decided on the uniformity issue. However, because we have vacated that order, the court will likely have to address different claims on remand.[16] Accordingly, we leave it to the court's sound discretion to determine if further discovery would be warranted in addressing those issues. We do not intimate any views on whether such additional discovery should be permitted.

---

[16] Plaintiffs argue the ulterior purpose of the ordinance was to "tamp down the value of [p]laintiffs' property in anticipation of condemnation." As noted above, according to plaintiffs, Hudson County's condemnation action is apparently "stalled" unlike the <u>Riggs</u> case where the condemnation proceeding was active. <u>See</u> 109 N.J. at 610. To the extent Hudson County or any other entity has instituted a condemnation proceeding, plaintiffs can raise this issue with the trial court on remand.

To the extent we have not specifically addressed any of plaintiffs' remaining arguments, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Reverse and remanded for further proceedings consistent with this opinion regarding the appeal, and affirmed as to the cross-appeal.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

34                                                              A-3316-21